**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Anthony David PRESS, Defendant-Appellant.**

**No. 79CA0310.**

Colorado Court of Appeals, Div. III.

April 9, 1981.

Rehearing Denied May 21, 1981.

Certiorari Denied Sept. 21, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Susan P. Mele-Sernovitz, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Abbo & Lass, Victor L. Abbo, Boulder, for defendant-appellant.

KIRSHBAUM, Judge.

Defendant, Anthony David Press, appeals his judgment of conviction of possession with intent to dispense marijuana and lysergic acid diethylamide (LSD).  We affirm.

The record reveals that in early May 1978, Manitou Springs Police Department Chief Harry F. Greenman authorized an investigation of marijuana usage at Manitou Springs Junior High School. On May 9, 1978, Mr. and Mrs. William Power and their 14-year old son Jefferson met with Chief Greenman, who interviewed Jefferson at length. From interviews with Jefferson and other students, including Matthew Newberry, detectives Thomas L. Kennedy and Roger Plank learned that Laurie Press, defendant's 14-year old daughter, had distributed marijuana at school. Kennedy, Plank, and detective John Mullins, Jr., then interviewed Laurie and another junior high school student, Rachelle Mayfield.

On May 16, detective Mullins executed an affidavit in support of an application for a warrant to search defendant's house. The affidavit stated, *inter alia*, that: (1) Jefferson and Matthew told the Colorado Springs detectives that Laurie had supplied them with marijuana at school; (2) Matthew told the Colorado Springs detectives that Laurie had stated to him that her father was a drug dealer; (3) Matthew had accompanied Mullins, Plank and Kennedy to the Press residence and identified it to them; (4) Rachelle told Mullins, Plank, and Kennedy that Laurie had supplied her with marijuana at school, that between May 5, 1978, and "the present" she had seen quantities of marijuana "both up and downstairs" in the Press residence, and that Laurie had told her, Rachelle, that she, Laurie, "possessed narcotics, marijuana, etc."

A warrant was issued on May 16, 1978, authorizing a search of defendant's house for dangerous drugs, narcotics, and drug-related paraphernalia. Mullins and other officers executed the warrant. The house was multi-leveled. The kitchen, bathroom, livingroom, and dining room were located on the upper level, together with defendant's bedroom. Laurie's room was located downstairs.

The officers seized some pipes, a set of scales, and a microscope from the kitchen and dining room. They found a small box containing marijuana in a hole dug out of the wall in defendant's bedroom. The hole was concealed by a picture.

The officers also discovered a small safe on the floor of defendant's bedroom, partially obscured by a wooden cabinet which was dismantled to permit seizure of the safe. As defendant was being interrogated at the police station at the time, officers telephoned the chief of police, who requested the safe's combination from defendant. Defendant denied the request. At that point, six officers carried the safe out of the house, transported it to a nearby fire station, and by use of a powerful metal-cutting device succeeded in opening the door. The safe contained two sacks of marijuana, three black envelopes containing LSD, and $800 cash.

At trial, officer Mullins testified that, contrary to the affidavit's contents, he did not actually accompany Matthew to defendant's house. Rachelle testified that, contrary to the affidavit's contents, she did not tell officers that she had seen marijuana both upstairs and downstairs in defendant's house but rather that she informed them she had seen marijuana in the upstairs level of defendant's house only in Laurie's possession. Officer Kennedy testified that Rachelle stated that she had seen marijuana in the house's upstairs rooms in addition to marijuana carried by Laurie. The trial court ruled at trial that even if the statement respecting Matthew's identification of defendant's house was stricken, the affidavit was sufficient to authorize the issuance of a warrant. The trial court concluded that Rachelle did make the statements to police officers attributed to her in the affidavit. Accordingly, the items seized from the house and from the safe were admitted into evidence at trial.

I. SUFFICIENCY OF THE AFFIDAVIT

Initially, defendant contends that the three juveniles who supplied information to investigating officers were not citizen informants, that the affidavit contained no facts tending to establish their reliability, and that the affidavit did not establish probable cause for the issuance of a warrant. We

agree that the youths were not citizen informants, but disagree with defendant's assertion that the affidavit fails to establish probable cause.

■■ A citizen informant is an "eyewitness who, with no motive but public service, and without expectation of payment, identifies himself and volunteers information to the police. . . ." *People v. Saars*, 196 Colo. 294, 584 P.2d 622 (1978). Information from a citizen informant is considered inherently trustworthy; thus, the prosecution need not establish the credibility of such informant. *People v. Hubbard*, 184 Colo. 225, 519 P.2d 951 (1974).

Here, in the course of a general investigation seeking information about drug use by students at the school, Jefferson and Matthew were taken to their principal's office and questioned there by police officers in the presence of their principal. Jefferson had previously been interrogated by the chief of police in the presence of his parents, at which time the chief, with the acquiescence of the boy's parents, threatened him with possible prosecution. In such circumstances, the information supplied by these young boys cannot be presumed to have been volunteered with no motive other than considerations of good citizenship. Rachelle's questioning also was initiated and directed by police officers. Thus, as defendant contends, in these circumstances the reliability of these three informants may not be presumed, but rather must be established.

■ An affidavit which relies upon hearsay information from an undisclosed informant rather than upon the affiant's personal observations must contain sufficient information to permit the judge who issues the warrant to make an independent determination that the informant was credible or that his information was reliable. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *People v. Peschong*, 181 Colo. 29, 506 P.2d 1232 (1973). Reliability of a first-time informant may be determined from independent corroborative facts, such as the recitation of specific details which suggest strongly the informant's

personal familiarity with the matter in question, *People v. MacDonald*, 173 Colo. 470, 480 P.2d 555 (1971), or the receipt of identical information from another source. *People v. Clark*, 175 Colo. 446, 488 P.2d 565 (1971).

■ Here, all the informants were identified by name. The reliability of Rachelle's statements was established by the specificity with which she described her observations of the contraband both upstairs and downstairs in the Press home, and by Matthew's corroboration of her statements concerning Laurie's involvement with marijuana at school. Hence, we conclude that the affidavit established probable cause for the issuance of the warrant.

## II. SEARCH OF THE SAFE

Defendant also contends that his Fourth Amendment right against unreasonable searches was violated when the police opened his safe without his permission. Defendant concedes that, assuming the validity of the search warrant for the house, seizure of the safe was lawful. He argues, however, that once the safe was in the custody of the police, they were obligated to obtain a second warrant before opening it. We disagree.

■ Defendant had a high expectation of privacy in the safe and its contents, as the People concede. *See United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *United States v. Martin*, 600 F.2d 1175 (5th Cir. 1979). However, the policy underlying the exclusionary rule is deterrence of police misconduct, *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *People v. Lindholm*, 197 Colo. 270, 591 P.2d 1032 (1979), and the test for Fourth Amendment purposes is whether police conduct pursuant to a warrant is reasonable under all the circumstances. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see State v. Thisius*, 281 N.W.2d 645 (Minn., 1979).

■ Here, the officers had probable cause to search for drugs and parapherna-

lia. They were thus authorized to search for such items in places where they might reasonably be expected to be secreted. *See, e. g., People v. Saam*, 106 Cal.App.3d 789, 165 Cal.Rptr. 256 (1980). They did seek unsuccessfully to obtain the combination from defendant. Under these circumstances, we find their conduct was reasonable and that the obtaining of a second warrant would have been superfluous. *See United States v. Kralik*, 611 F.2d 343 (10th Cir. 1979), *cert. denied*, 445 U.S. 953, 100 S.Ct. 1603, 63 L.Ed.2d 788 (1980); *United States v. Morris*, 491 F.Supp. 222 (S.D.Ga.1980).

Judgment affirmed.

KELLY, J., concurs.

BERMAN, J., dissents.

BERMAN, Judge, dissenting.

Respectfully, I dissent.

The majority holds that no infringement of defendant's Fourth Amendment rights occurred when the police, in executing a warrant to search defendant's house, seized a safe there found, transported it to another location, and, without obtaining an additional warrant, forcibly opened it without defendant's consent. I cannot concur in such a holding.

As stated in *United States v. Martin*, 600 F.2d 1175 (5th Cir. 1979):

"For Fourth Amendment purposes, the opening of the safe constituted an encroachment upon Appellees' reasonable expectation of privacy wholly separate from and much more intrusive than the initial seizure."

And, in the instant case there was, as in *Martin*, "no apparent exigency or other justification for the warrantless conduct . . . ."

Furthermore, "[t]here may be cases ·in which, on balance, [it should be ruled] that specific authorization should have been obtained before doing damage to property in order to successfully execute a search warrant." *State v. Thisius*, Minn., 281 N.W.2d 645 (1978), cited by the majority. In my view, we have before us today exactly such a case.

The instant case is distinguishable from those cited by the majority in that the latter cases did not involve a heightened reasonable expectation of privacy, *see Martin, supra*, nor did the searches considered in those cases entail substantial damage, *see Thisius, supra*.

Since, in my view, defendant's safe was searched illegally, the evidence found therein should not have been admitted at his trial. Accordingly, I would reverse and remand for a new trial.