The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

LOT 23 AND ALL BUT THE SOUTHERLY 40 FEET OF LOT 22, MOUNTAIN MEADOWS SUBDIVISION, located in Section 30, Township 1 North, Range 71 West, County of Boulder, State of Colorado, and all improvements, appurtenances, the curtilage, buildings, and property therein—including personal, tangible, and intangible, and other personal property including: Approximately $89,676 in United States currency; one personal check valued at $688; Canadian currency, mint proof sets, and miscellaneous bars of Englehard silver, collectively valued at $35,000 in United States Currency; Jill Buckner; Richard D. Jones (As Lessor); Melinda K. Jones (As Lessor); and any and all other unknown persons claiming any interest in the subject matter of this action: Lots 22 and 23, Defendants,

and

Lloyd Ferrell Wingfield, a/k/a Walter Dawson, Defendant-Appellant.

No. 83CA0953.

Colorado Court of Appeals, Div. I.

Feb. 28, 1985.

As Modified on Denial of Rehearing March 28, 1985.

Certiorari Granted Oct. 15, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Daniel Dailey, First Asst. Atty. Gen., John Milton Hutchins, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Dixon & Snow, Rod W. Snow, Frank Martinez, Denver, for defendant-appellant.

PIERCE, Judge.

Defendant, Lloyd Ferrell Wingfield, appeals from a judgment and order of abatement and forfeiture entered pursuant to § 16–13–301, et seq., C.R.S. (1978 Repl. Vol. 8). We affirm in part and reverse in part.

Pursuant to a search warrant, Wingfield's residence was searched and in addition to drugs and drug paraphernalia, certain personal property and cash were seized. The search warrant authorized a search for:

> "Any suspected cannabis ... [a]ny identification bearing the name or picture of Lloyd Ferrell Wingfiled, [a]ny articles, implements, or records, which would tend to show ownership of any suspected controlled substances, or occupants of the residence."

The warrant was based on an affidavit by the arresting police officer who stated that she had observed two freezer bags with suspected marijuana at the residence, and that she knew from an accompanying FBI agent that Wingfield was wanted on a federal fugitive warrant on a charge of marijuana importation, and that he had been using several aliases.

The search encompassed the entire residence, including a locked footlocker in which suspected cocaine, marijuana, hash-ish, various drug paraphernalia, several notebooks with records that appeared to pertain to drug transactions, two Canadian mint sets, and $88,860 in U.S. currency were found. In addition, three metal buckets were found behind a bar in the basement, containing additional Canadian mint-proof sets and bars of Englehard silver. The search also located drugs, together with cashier receipts, a cashier's check, and some cash on a shelf in the bedroom. Some Canadian currency was also found in a glass pitcher in the dining room. Defendant's wallet and identification were also found and seized. All currency, coins, and silver bars that were seized, were ordered distributed by the court to various public agencies.

■ Defendant argues, and the People concede, that the exclusionary rule applies to forfeiture actions. *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). Thus, the government has the burden to show that a valid search and seizure under the Fourth Amendment was conducted. *See One 1958 Plymouth Sedan, supra; United States v. $84,000 U.S. Currency*, 717 F.2d 1090 (7th Cir.1983).

Defendant argues that under *People v. Clavey*, 187 Colo. 305, 530 P.2d 491 (1975), once the marijuana was found, no probable cause existed to search for additional materials. Specifically, defendant argues that the search warrant was not broad enough to allow either the search or seizure of the locked footlocker, the buckets, and their contents, or of the other currency, or even of defendant's wallet and identification. We disagree, except as to the contents of the buckets and the money in the glass pitcher.

■ Having seen the two bags of marijuana in the freezer, and knowing that at least one of the defendants was wanted on a federal fugitive warrant related to marijuana trafficking, the officers could reasonably infer that there might also be other marijuana, as well as related drug paraphernalia elsewhere in the house; thus,

there was probable cause for the search. *See People v. McGill,* 187 Colo. 65, 528 P.2d 386 (1974).

In *People v. Clavey, supra,* the search was based only on a controlled delivery of envelopes containing cocaine; thus, the officers conducting the search did not have the requisite probable cause to believe there were narcotics or drug paraphernalia at Clavey's residence. In contrast here, the information upon which the warrant was based justified a general search of the premises.

◼◼ Having probable cause to search for drugs and paraphernalia, the officers were authorized to search in places where such items might reasonably be expected to be secreted. *People v. Press,* 633 P.2d 489 (Colo.App.1981). Additional marijuana or drug paraphernalia or identifying documents could reasonably be secreted in a footlocker or in the buckets. Therefore, the search of these closed containers was reasonable and not in violation of the Fourth Amendment. *See People v. Garcia,* 195 Colo. 547, 579 P.2d 1150 (1978); *People v. Press, supra.*

Contrary to defendant's argument, *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) and *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) are inapposite since those cases dealt with warrantless searches.

◼◼ Acting as they were under a valid search warrant, the officers were not required to ignore the other contraband and materials connected therewith found in the footlocker. *People v. Garcia, supra.* The same holds true for items found on the shelf in the bedroom. Hence, the initial search and seizure was entirely proper.

However, there remains the question of whether all of the items seized may be retained by the state. We are guided by *People v. Bustam,* 641 P.2d 968 (Colo. 1982), which held that, in addition to showing that a valid search and seizure has been conducted as to any articles not specifically described in a warrant and not *per se* connected with criminal activity, the People have the burden of showing a nexus between the articles seized and criminal activity. In *Bustam,* a large amount of cash was seized from the person of the defendant. There was testimony from a witness called by the state that drug dealers frequently carry large sums of money on their persons because it is necessary to carry out their dealings in street drug traffic. Our Supreme Court, therefore, found the requisite nexus.

In the case before us, the People went no further than to detail what items were found and where they were found on the premises which the defendant was leasing. If we are to find a link between the items seized and criminal activity, it can only be done by inference.

◼◼ Here, a large sum of cash and valuable coins were found together with illicit drugs and records of apparent drug sales in a footlocker. We hold that there is a nexus between these items and illegal drug activity. *See Bustam, supra; People v. Franklin,* 640 P.2d 226 (Colo.1982). Similarly, a connection exists in the drugs found on the shelf and the money found on the same shelf.

◼◼ However, although the search validly extended to the basement where the three buckets were found, as well as to their contents, there is *no evidence that the bars of silver or Canadian mint sets found in those buckets were connected in any way with the drugs or other criminal activity.* Unlike the currency and coins found together with the drugs and drug records in the footlocker, the silver was found away from any items of an incriminating nature in buckets which stood separately behind the bar in the basement. We cannot say that the bars of silver and the coins, solely by their nature and appearance, are items which reasonably would be considered as evidence of drug offenses. The People presented no evidence showing that the silver or these particular mint sets had been purchased with funds derived

from the drug activity or that they were in any other way linked to that activity.

 Similarly, although the Canadian currency found in the glass pitcher in the dining room was lawfully seized, *People v. Hearty*, 644 P.2d 302 (Colo.1982), no evidence was submitted, nor can an inference be made, connecting the currency with the drug activity. Under the record before us, an equally reasonable inference can be drawn that these items were not connected with the drug activity. Hence, the People did not meet their burden that these items were connected with defendant's criminal activity. *Cf. Bustam, supra.* Therefore, they should have been returned to defendant.

Defendant's argument that his wallet and identification information were illegally seized lacks merit.

The judgment is reversed as to the bars of silver and the Canadian mint sets found in the buckets, and the currency found in the glass pitcher. The cause is remanded with directions that these items, or their equivalent present value if they cannot be recovered, be returned to defendant. The judgment is affirmed in all other respects.

VAN CISE and TURSI, JJ., concur.