The PEOPLE of the State of
Colorado, Petitioner,

v.

LOT 23 and all but the southerly 40 feet of Lot 22, Mountain Meadows Subdivision, Located in Section 30, Township 1 North, Range 71 West, County of Boulder, State of Colorado, and all improvements, appurtenances, the curtilage, buildings, and property therein including personal, tangible, and intangible, and other personal property including approximately $89,676 in United States Currency; One Personal Check Valued At $688; Canadian Currency, Mint Proof Sets, and Miscellaneous Bars of Englehard Silver, collectively valued at $35,000 in United States Currency; Jill Buckner; Richard D. Jones (As Lessor); Melinda K. Jones (As Lessor); and Any and All Other Unknown Persons Claiming Any Interest In the Subject Matter of This Action: Lots 22 and 23, and Lloyd Ferrell Wingfield, a/k/a Walter Dawson, Respondents.

No. 85SC146.

Supreme Court of Colorado,
En Banc.

April 13, 1987.

8A C.R.S. (1986). With regard to the property forfeited under the trial court's order, the court of appeals affirmed the forfeiture of the currency and valuable coins that were found together with illicit drugs, but held that the People had failed to establish a connection between silver bars and valuable coins found away from the drugs, thereby reversing the trial court's order of forfeiture as to those items. We granted certiorari to determine whether, in a forfeiture proceeding, the People have the burden of showing a nexus between the contraband per se and the alleged derivative contraband as is required in a criminal context under *People v. Bustam*, 641 P.2d 968 (Colo.1982). Because we find that the court of appeals misconstrued the burden of proof as applied to civil actions for the abatement of a public nuisance, we reverse the decision as it relates to the silver bars and the Canadian mint sets found in the buckets, and the Canadian currency found in the dining room, and remand the case with instructions that the trial court's ruling be reinstated.

## I.

On November 5, 1982, the City of Boulder Police Department, working in conjunction with a special agent of the Federal Bureau of Investigation, executed a valid federal arrest warrant for Lloyd Ferrell Wingfield, also known as Walter Dawson. The warrant related to a charge of unlawful flight to avoid prosecution issued out of the State of Florida, based upon a charge of importation of significant amounts of marijuana into the State of Florida. The respondent had been living at a residence in the Mountain Meadows subdivision in Boulder County for approximately two months. The residence was owned by Richard D. Jones and Melinda K. Jones, who it was determined were ignorant of the public nuisance created on their property.

While the law enforcement officers were in the residence, pursuant to the arrest warrant, Jill Buckner, the girlfriend of the respondent and an occupant of the residence, went to the refrigerator in the kitch-

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Milton Hutchins, First Asst. Atty. Gen., Denver, for petitioner.

Dixon and Snow, P.C., Rod W. Snow, Frank Martinez, Steven Janiszewski, Denver, for respondent Lloyd Ferrell Wingfield, a/k/a Walter Dawson.

VOLLACK, Justice.

The People bring this appeal from the court of appeals' decision in *People v. Lot 23*, 707 P.2d 1001 (Colo.App.1985), concerning forfeiture of respondent's property pursuant to the Colorado Abatement of Public Nuisance Statute [hereinafter Public Nuisance Statute], sections 16–13–301 to –316,

en to get ice cubes for a glass of water. While the freezer door was open, a Boulder police officer noticed two plastic bags in the freezer containing what appeared to be marijuana. Acting on this observation, the officer secured a search warrant for the residence while the respondent and Buckner were detained. The search warrant authorized a search for:

1. Any Cannibis [sic] (Marijuana) lving [sic] or dead; 2. Any identification bearing the name or picture of Lloyd Ferrell Wingfield; 3. Any articles, papers, implements, or records, which would tend to show ownership of any suspected Controlled Substances, or occupants of the residence.

With possession of the search warrant, the law enforcement officers searched the entire residence belonging to the respondent.

During the search, a metal footlocker was found in a room on the second floor, identified as the study. The footlocker contained a triple beam scale with case, a "hotbox" in a wooden case (a heating device used to melt powder substances to determine cocaine purity), a wooden box with weights, miscellaneous paraphernalia, a tin of suspected marijuana and hashish, 57.5 grams of suspected cocaine from a blue bag, a blue bag with miscellaneous items for sifting and using cocaine, together with 95½ white cross pills, four empty bottles of cocaine cut (used to dilute cocaine), a manila envelope with blank birth certificates and identification forms, two spiral notebooks containing columns of numbers and letters, a book entitled "Cocaine Handbook," two small manila envelopes, both containing Canadian mint sets, and $88,860 in U.S. currency. In a bedroom, the officers found various pills and a blue plastic oval case containing suspected cocaine, together with $816 in U.S. currency and two cashier check receipts in the name of Walter Dawson. Also during the execution of the warrant, $744 in Canadian currency was found in a glass pitcher in the dining room. A search of the basement revealed three two-gallon metal buckets, gray in color, with lids. One of the buckets contained 102 Canadian mint sets, each contained in a small manila envelope, and eight bars of silver; another bucket contained 174 Canadian mint sets, contained in small envelopes, and eight bars of silver; the third bucket contained 145 Canadian mint sets, also in manila envelopes, and eight bars of silver.

On November 8, 1982, the People brought this civil action pursuant to the Public Nuisance Statute, sections 16–13–301 to –316, 8A C.R.S. (1986). The complaint charged that the respondent and Buckner used the real and personal property, the subject matter of this action, to facilitate the unlawful sale, distribution, storage, and possession of a Schedule II controlled substance (cocaine), and an unscheduled controlled substance (marijuana) in violation of sections 18–18–103 and 18–18–106, 8B C.R.S. (1986). The complaint stated that the residence was owned by persons other than the respondent and Buckner, and that the owners had no information as to the illegal use of their land or the creation of a class 1 nuisance. A court trial was held, in which the People presented evidence as to the existence of the arrest warrant for the respondent and the various items found during the search and their location. A police officer, an expert on cocaine distribution, testified that the contents of the footlocker were consistent with the distribution and sale of cocaine. The respondent presented no evidence at trial.

The trial court found that the search warrant, pursuant to which the contraband and currency were found, was valid based on probable cause. The trial court held that the residence was used for the unlawful storage and distribution of a controlled substance. Accordingly, the court declared the real property and improvements, and all contents and fixtures attached to the property, to be a class 1 public nuisance. The court allowed for the redelivery of the real property to the Joneses, the innocent owners, on condition that they agree to abate and prevent the reoccurrence of such nuisance for a period of one year. The trial court held that the currency and silver bars seized by the law enforcement officers were deemed to be the contents of the

building and therefore subject to seizure, confiscation and forfeiture under the Public Nuisance Statute. The court held that there was no evidence in the record which entitled the respondent to redelivery of the subject property.

The respondent appealed from the trial court's judgment, claiming that the search warrant was not broad enough to allow either the search or seizure of the locked footlocker, the buckets and their contents, or the currency found in the dining room. The court of appeals rejected the respondent's argument, stating that "acting as they were under a valid search warrant, the officers were not required to ignore the other contraband and materials connected therewith found in the footlocker." *Lot 23*, 707 P.2d at 1004. However, while the court of appeals held that the initial search and seizure were entirely proper, the court questioned whether all the items seized could be retained by the state. The court of appeals applied our decision in *People v. Bustam*, 641 P.2d 968 (Colo.1982), a criminal case in which we held that where a search warrant does not specifically describe the item seized and the item is not per se connected with criminal activity, the People bear the burden of establishing a connection between the item seized and the criminal activity. The court of appeals stated that because the People only presented evidence as to what items were found and where they were found, the court was required to find a link between the item seized and the criminal activity by inference. *Lot 23*, 707 P.2d at 1004. The court of appeals found a nexus as to the currency and the Canadian mint sets found together with the illicit drugs in the footlocker, and similarly, a connection between the drugs found on the shelf in the bedroom and the money found on the same shelf. However, the court of appeals found there to be no nexus or connection between the criminal activity and the bars of silver and Canadian mint sets found in the basement, or the Canadian currency found in the glass pitcher in the dining room, on the grounds that the People failed to establish any evidence showing that the silver or "these particular mint sets" had

been purchased with funds derived from the drug activity. Therefore, the court of appeals reversed and remanded in part the trial court's decision and ordered that the bars of silver and the Canadian mint sets found in the buckets, and the currency found in the glass pitcher be returned to the respondent. *Id.* at 1004–05.

## II.

Colorado's Public Nuisance Statute provides that "every public nuisance shall be restrained, prevented, abated, and perpetually enjoined." § 16–13–302, 8A C.R.S. (1986). Section 16–13–303 provides:

> Class 1 public nuisance. (1) Every building or part of a building including the ground upon which it is situate and all fixtures and contents thereof, every vehicle, and any real property shall be deemed a class 1 public nuisance when:
>
> . . . .
>
> (c) Used for unlawful manufacture, cultivation, growth, production, processing, sale, or distribution or for storage or possession for any unlawful manufacture, sale, or distribution of any controlled substance, as defined in section 12–22–303(7), C.R.S., or other drug the possession of which is an offense under the laws of this state or imitation controlled substance, as defined in section 18–5–602(3), C.R.S.

The trial court found that the real property and improvements located in the Mountain Meadows Subdivision in Boulder County, as well as the contents of the residence, were used for the unlawful storage and possession for sale and distribution of controlled substances. Thus, the entire building and all the fixtures and contents thereof were deemed a class 1 public nuisance. § 16–13–303(1)(c), 8A C.R.S. (1986). Colorado's Public Nuisance Statute and forfeiture actions pursuant to the statute are essentially civil in nature. *People v. Milton and One 1973 Chevrolet Suburban Automobile*, 732 P.2d 1199 (Colo.1987). The primary purpose of the forfeiture action is to abate the public nuisance. *Id.* Section 16–13–303(2) states:

The fixtures and contents of any building, structure, vehicle, or any real property which is a class 1 public nuisance under subsection (1) of this section and the personal property of every kind and description, including currency and other negotiable instruments and vehicles, used in conducting, maintaining, aiding, or abetting any class 1 public nuisance are subject to seizure, confiscation, and forfeiture as provided in this part 3, *unless the possession of said property is not unlawful and the owner of said property was not a party to the creation of the nuisance* and would suffer undue hardship by sale, confiscation, or destruction of the property.

§ 16–13–303(2), 8A C.R.S. (1986) (emphasis added).

 In a civil action for the abatement of a public nuisance the government must prove the elements of a class 1 public nuisance by a preponderance of the evidence. *People v. Milton,* at 1207. In the case before us, the People went forward with their prima facie case. It is not disputed that illegal drugs were found in the respondent's residence, and the evidence supports the finding that the house was used for the storage of controlled substances for sale and distribution; thus, the entire building was subject to forfeiture. For forfeiture of the contents of the building, the People have the initial burden of proving by a preponderance of the evidence that the fixtures and contents of the class 1 public nuisance were used in conducting, maintaining, aiding or abetting the class 1 nuisance. The establishment of the prima facie case shifts the burden to the defendant to articulate a reasonable explanation concerning the property, by showing that the possession of said property is not unlawful and that the owner of said property was not a party to the creation of the nuisance. *See* § 16–13–303(2). Under section 16–13–303(2), it is the property owner's burden to show that the possession of such property seized is not unlawful. As we stated in *People v. Milton:*

> In addition to imposing no penalties or fines directly on the owner of the offending property, the statute permits an innocent owner to defend against the forfeiture proceeding by showing that the possession of the property "is not unlawful" and that he "was not a party to the creation of the nuisance and would suffer undue hardship by sale, confiscation, or destruction of the property."

*Id.,* at 1204. Thus it is sufficient that the People establish by a preponderance that the contents seized were used in the activity that created the public nuisance. *See People v. Snyder,* 52 Ill.App.3d 612, 10 Ill.Dec. 299, 367 N.E.2d 752 (1977) (state must prove its right to property by preponderance and where article is not contraband per se, its use must have a rational relationship to an unlawful purpose before it is subject to forfeiture). *Cf. One 1982 Datsun 280ZX v. Bentley,* 285 Ark. 121, 685 S.W.2d 498 (1985) (state must show property used for unlawful purpose by a preponderance of the evidence).

 We accepted certiorari on this case before our decision in *People v. Milton,* which held the Public Nuisance Statute to be a civil statute. There was confusion over the proper standard of proof to apply, and we accepted certiorari on whether the criminal standard of probable cause, as applied in *People v. Bustam,* was the proper standard. Based on our decision in *People v. Milton,* this question must be answered in the negative.

 In the case before us, both the trial court and the court of appeals held that there was probable cause for the issuance of the search warrant, pursuant to which all the items in the civil action were seized. With this finding, the application of the term "probable cause" ends.[1] The case of

---

1. We note that the federal cases on civil forfeiture pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970, § 511, 21 U.S.C. § 881 (1981 & 1986 Supp.), categorize the government's burden as that of probable cause, which may lead to some confusion over the applicable standards. This is because section 881(d) incorporates 19 U.S.C. § 1615, which mandates that "probable cause shall be first shown for the institution of such suit or action." Under this act probable cause is established by a reasonable ground for a belief of guilt sup-

*People v. Bustam* is not applicable to the case at bar. In *Bustam,* we addressed the warrantless entry into the defendant's residence and the seizure of cash as a fruit of illegal activity. We adhered to the well established rule that when an article is not specifically described in a warrant, and when it is not per se connected with criminal activity, the burden of showing the connection by probable cause falls upon the People. 641 P.2d at 973. The Public Nuisance Statute is a civil statute and civil standards of proof are applicable.[2]

Therefore, the question for this court to address is whether the People sustained their burden of proving by a preponderance of the evidence that the items seized were used in the criminal activity.

■ A similar situation was before the Court of Special Appeals of Maryland in *Ewachiw v. Director of Finance,* 70 Md. App. 58, 519 A.2d 1327 (1987). The court interpreted a statute designed to control trafficking in controlled dangerous substances which provided for the forfeiture to the state of all money or currency found to have been used or intended for use in connection with the drug traffic. The court addressed the issue of whether the currency seized was properly the subject of forfeiture. The statute provided that:

> All money, coin, or currency which is found in *close proximity* to contraband controlled dangerous substances, controlled paraphernalia, or forfeitable records of the importation, manufacture, or distribution of controlled dangerous substances are presumed to be forfeitable under this paragraph. The burden of proof is upon the claimant of the property to rebut this presumption.

*Ewachiw,* 519 A.2d at 1329 (emphasis added). This "close proximity" requirement is more restrictive than the Colorado Public Nuisance Statute, which does not contain a

---

ported by less than prima facie proof but more than mere suspicion. *United States v. $22,-287.00 In U.S. Currency,* 709 F.2d 442 (6th Cir. 1983).

> Section 881(d) states in pertinent part:
>> The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, except to the extent that such duties arise from seizures and forfeitures effected by any customs officer.

> 21 U.S.C. § 881(d) (1981 & 1986 Supp.).
> Section 1615 reads as follows:
>> In all suits or actions (other than those arising under section 1592 of this title) brought for the forfeiture of any vessel, vehicle, aircraft, merchandise, or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage, where the property is claimed by any person, the burden of proof shall lie upon such claim-

ant; and in all suits or actions brought for the recovery of the value of any vessel, vehicle, aircraft, merchandise, or baggage, because of violation of any such law, the burden of proof shall be upon the defendant: *Provided,* That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court, subject to the following rules of proof: . . . .

19 U.S.C. § 1615 (1986 Supp.) (emphasis in original).

**2.** Civil forfeiture is distinct from criminal forfeiture because it is viewed as a proceeding brought against the property rather than the person. *United States v. $39,000 in Canadian Currency,* 801 F.2d 1210 (10th Cir.1986). This element of civil forfeitures characterizes them as proceedings in rem, with the "offending inanimate objects" as defendants. *Bramble v. Richardson,* 498 F.2d 968, 971 (10th Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974).

At common law the value of an inanimate object directly or indirectly causing the accidental death of a king's subject was forfeited to the crown as a deodand. While deodands did not become part of the common law tradition of this country, modern forfeiture statutes, both federal and state, reach virtually any type of property that might be used in the conduct of a criminal enterprise. *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (court held statutory forfeiture schemes not rendered unconstitutional because of their applicability to the property interests of innocents).

proximity element. In *Ewachiw*, evidence presented showed that paraphernalia used in the manufacture of various controlled substances were found in the basement of the respondent's residence, and also in the living room/dining room area on the first floor, with miscellaneous items found in the kitchen. Upstairs in a second floor bedroom, the police found literature dealing with chemicals, and a substantial amount of currency. There was testimony at trial that respondent's method of wrapping $100 packs into increments of $1,000 was consistent with drug trafficking practices. The *Ewachiw* court, relying on *Bozman v. Office of Finance*, 52 Md.App. 1, 445 A.2d 1073 (1982), *aff'd*, 296 Md. 492, 463 A.2d 832 (1983), quotes a passage from that case that we think helpful in our analysis:

> The breadth of the term "close proximity" deliberately has not been defined by either Maryland appellate court. Were we to undertake a delineating of "close proximity," it is almost a foregone conclusion that in any future searches, monies will always be found outside the area embraced by our definition. We shall not, therefore, attempt to define "close proximity." Instead, we shall treat the term with the same deference afforded "fraud" and "a quantity sufficient to indicate an intent to distribute." We liken "close proximity" to Justice Stewart's comment on pornography. We do not define it, but we know it when we see it. In short, we shall determine "close proximity" on a case-by-case basis.

*Id.*, 519 A.2d at 1330 (quoting *Bozman*, 52 Md.App. at 4–5, 445 A.2d at 1075). *Accord, Limon v. State*, 285 Ark. 166, 685 S.W.2d 515 (1985) (construing statute which provides that money found in close proximity to forfeitable articles is presumed to be forfeited).

■ We think such a common sense approach is necessary in the instant case. Were we to decide that large amounts of cash or currency found in a building deemed to be a public nuisance for the storage of a controlled substance for sale and distribution were to be derivative contraband only if found within a close physical proximity to contraband per se, we would invite individuals intent on criminal activity to store their drugs and illegal contraband in one section of the house and their proceeds from their criminal activity in another section of the house.

■ In the case before us, the entire residence was declared a public nuisance by the trial court. Based upon evidence presented at trial, including testimony of an expert in cocaine distribution, the trial court held that the building was used for the unlawful storage and possession for sale and distribution of a controlled substance. *Cf. People v. McBeath*, 709 P.2d 38 (Colo.App.1985) (where People offer no evidence of any connection between the residence, together with fixtures and personalty found therein, and defendant's criminal activity, no inference is available to sustain People's burden to establish nexus). The trial court found that all the items seized were subject to forfeiture. We find that the trial court could reasonably infer that the use of the Canadian mint sets and silver found in the basement was connected or rationally related to the cocaine distribution activity which was deemed a public nuisance. *Accord, People v. Snyder*. The burden shifted to the respondent, once the People went forward with their prima facie case, to present his case as to why the property should not be seized. The respondent presented no evidence, thus failing to carry his burden of proof.

Accordingly, we reverse that part of the court of appeals' opinion which returned the silver bars and Canadian mint sets found in the basement and the currency found in the dining room to the respondent, and affirm the holding as to other property.