**The PEOPLE of the State of Colorado, Petitioner–Appellant,**

**In the Interest of D.F.L., Juvenile–Appellee,**

**and**

**Concerning: K.W., Respondent–Appellee.**

**No. 96SA141.**

Supreme Court of Colorado, En Banc.

Jan. 13, 1997.

---

Robert R. Gallagher, Jr., District Attorney, Eighteenth Judicial District, James C. Sell, Chief Deputy District Attorney, Englewood, for Petitioner–Appellant.

Lozow & Lozow, P.C., Bradley A. Lozow, Denver, for Juvenile, Respondent–Appellee.

Justice MULLARKEY delivered the Opinion of the Court.

In this interlocutory appeal under C.A.R. 4.1, the People challenge an order of the district court suppressing (1) evidence seized pursuant to a search warrant and (2) a statement made by a juvenile while in police custody. The district court held that drugs found in the juvenile's purse must be suppressed because the search warrant that allowed officers to search the apartment did not cover the personal property of the juvenile who was not a resident of the apartment and was not named in the warrant or the accompanying affidavits. In addition, the district court suppressed a statement which was made by the juvenile while she was in custody because the juvenile was not advised of her rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and because she was interrogated without the presence of a "parent, guardian, or legal or physical custodian," in violation of section 19–2–210, 8B C.R.S. (1996 Supp.).

■ We disagree with the district court that the search of the juvenile's purse was beyond the scope of the search warrant. The search warrant at issue authorized the officers to search the apartment for marijuana and L.S.D. and also "such vessels, implements, and furniture used in connection with the manufacture, production, storage, or dispensing of such drugs." Because the purse was found in a bedroom of the apartment and

is fairly characterized as a "vessel" which could be used to store drugs, the search of the purse was authorized by the search warrant.

With respect to the statement made by the juvenile while in custody, however, we agree with the district court that the statement must be suppressed. After finding the purse, but before searching it, an officer asked the four individuals in custody, including the juvenile, "Whose purse is this?" The juvenile responded, "That's mine." We hold that the officer's inquiry constituted custodial interrogation requiring that the juvenile be advised before questioning of her *Miranda* rights and that she be questioned only in the presence of a parent, guardian, or legal or physical custodian. We therefore affirm in part, reverse in part the decision of the district court, and remand the case to that court with directions.

## I.

On January 31, 1995, Officer Claudia Shires of the Aurora Police Department received information that certain named individuals were selling narcotics out of an apartment in Aurora, Colorado.[1] Officer Shires applied for and received approval to execute a "no-knock" search warrant that authorized a search of the apartment and the persons found therein, as well as "such vessels, implements, and furniture used in connection with the manufacture, production, storage, or dispensing of marijuana or Lysergic Acid Diethylamide (L.S.D.)."[2] The warrant also authorized the seizure of any "articles of personal property tending to establish the identity of the person in control of the contraband."

On the evening of January 31, 1995, officers from the Aurora Police Department executed the search warrant on the residence. Upon entering the apartment, the officers found three male individuals and D.F.L., the juvenile involved in this case, in the living-room area of the apartment. The officers secured the apartment, patted down the individuals, and placed them in custody. The juvenile was taken to the bathroom area by Officer Shires and was searched for weapons or contraband. Neither was found at that time. The juvenile then was returned to the living room where all four individuals were handcuffed.[3]

Thereafter, Officer Shires entered the master bedroom and found a brown purse near the bed. The officer brought the purse back to the living room and asked all four individuals to whom the purse belonged. The juvenile identified the purse as hers with the statement, "That's mine." The juvenile was not advised of her rights under *Miranda* prior to the officer's inquiry.

After all four persons were taken to the police station for identification, the officers thoroughly searched the apartment. At that point, Officer Shires searched the purse and found an otherwise empty cigarette package that contained what appeared to be a dried mushroom. The mushroom was later positively identified as psilocybin, a schedule I controlled substance. *See* § 18–18–405, 8B C.R.S. (1996 Supp.).

Upon returning to the Aurora Police Department, Officer Shires went to the holding cell where the juvenile was being detained. Again, without first advising the juvenile of her rights under *Miranda* and section 19–2–210, the officer stated, "You won't believe what we found in your purse." The juvenile then responded that the mushroom was not hers and that she was only holding it for someone.

The juvenile was arrested and charged in a delinquency proceeding for possession of a schedule I controlled substance in violation of

1. The juvenile in this case was not named in the search warrant.

2. A "no knock" search warrant allows officers to enter a residence without knocking first and is typically authorized to protect the safety of officers when there is a possibility that deadly weapons are involved. In this case, the informant warned Officer Shires that he had observed persons in the apartment with guns and also that the resident who was dealing drugs out of the apartment may have obtained a handgun.

3. The record indicates that handcuffing all individuals present was a procedure typically followed by the Aurora Police Department when conducting a drug-type no-knock search warrant.

section 18–18–405, 5B C.R.S. (1996 Supp.). The juvenile then moved to suppress the evidence obtained as a result of the search of her purse and the statements she made while at the apartment and while in the holding cell.

After hearing the testimony of Officer Shires at the motions hearing, the district court ruled that the evidence and the statements should be suppressed. The district court found that, although there was probable cause to search the apartment, the search of the purse was illegal because it was beyond the scope of the search warrant. According to the district court, since the search warrant did not indicate that a female was involved in any of the drug transactions, the search of the purse was not authorized by the warrant. The district court also found that the officers did not have any independent probable cause to suspect that the juvenile was involved in drug transactions or that the purse contained any drugs. The district court ruled, therefore, that the search of the purse was illegal and suppressed the evidence obtained as a result of that search.

With regard to the juvenile's statements, the district court found that the juvenile was in custody both at the apartment and in the holding cell. At the apartment, the juvenile was in handcuffs and, according to the testimony of Officer Shires, was "not free to leave." The juvenile also was in custody when she was locked in the holding cell. The district court further found that both of the juvenile's statements were a direct result of interrogation by the officers. Because the officer admittedly failed, in both instances, to advise the juvenile of her rights under *Miranda* and to follow the requirements of section 19–2–210, the district court suppressed the statements. The People now appeal the district court's rulings concerning the search of the purse and the juvenile's statement at the apartment.[4]

## II.

The People contend that the district court erred in suppressing the evidence found in the purse. According to the People, the search of the purse was included within the four corners of the search warrant because the purse was found within the apartment and is a container capable of holding the drugs and drug paraphernalia identified in the warrant. Therefore, the People argue that any lack of independent probable cause to search the purse is irrelevant and that the search of the purse was legal. We agree.

In *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the United States Supreme Court held that where police officers have probable cause to search an entire motor vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages, that may conceal the object of the search. *Id.* at 823–24, 102 S.Ct. at 2172–73. In reaching this conclusion, the Court also discussed the reasonable scope of lawful searches in other contexts. With respect to fixed premises such as buildings or dwellings, the court stated:

> [a] lawful search ... generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

*Id.* at 821, 102 S.Ct. at 2170–71. Based in part on *Ross,* federal courts have consistently applied the general proposition that a container found within a dwelling or residence that is subject to a validly issued warrant may be searched by law enforcement officers if it "is large enough to contain the contraband or evidence that [the officers] are looking for." *United States v. Evans,* 92 F.3d 540, 543 (7th Cir.1996); *see also United States v. Rutkowski,* 877 F.2d 139, 141 (1st Cir.1989)("Any container situated within residential premises which are the subject of a validly-issued warrant may be searched if it

---

4. The People concede that Officer Shires's statement to the juvenile at the police department constituted custodial interrogation and that the juvenile's response was correctly suppressed by the district court.

is reasonable to believe that the container could conceal items of the kind portrayed in the warrant.").

The general proposition that police officers executing a valid warrant may search closed containers so long as the containers are of the type within which the items named in the warrant might reasonably be found similarly has been applied by Colorado courts. In *People v. Press*, 633 P.2d 489 (Colo.App. 1981), police officers executed a warrant to search a residence for dangerous drugs, narcotics, and drug-related paraphernalia. *Id.* at 491. One of the issues resolved by the court of appeals in *Press* was whether, pursuant to the search warrant authorizing a search of the premises, officers could open and search a locked safe located within that residence. The defendant in *Press* argued that, even assuming that the seizure of the safe was lawful, the police were obliged to obtain a second warrant before opening it. *Id.* at 492. The court of appeals disagreed and held that the officers were "authorized to search for [drugs and paraphernalia] in places where they might reasonably be expected to be secreted." *Id.* at 493.

The rationale upon which the *Press* court relied was applied again by the court of appeals in *People v. Lot 23*, 707 P.2d 1001 (Colo.App.1985), involving an appeal from a judgment and order of abatement and forfeiture. *Id.* at 1003. The police had seized the defendant's property after conducting a lawful search of his residence pursuant to a search warrant which authorized a search for:

"Any suspected cannabis . . . [a]ny identification bearing the name or picture of Lloyd Ferrell Wingfiled [sic], [a]ny articles, implements, or records, which would tend to show ownership of any suspected controlled substances, or occupants of the residence."

*Id.* (quoting the search warrant). One of the issues in *Lot 23* was whether the search warrant authorized a search of a closed footlocker and other containers including three buckets and a glass pitcher. Citing *Press*, the court of appeals stated that the officers "were authorized to search in places where such items [listed in the search warrant]

might reasonably be expected to be secreted." *Lot 23*, 707 P.2d at 1004. Because marijuana, drug paraphernalia, and identifying information all can be secreted in a footlocker, bucket, or pitcher, the court of appeals held that "the search of these closed containers was reasonable and not in violation of the Fourth Amendment." *Id.*

In the present case, the officers were executing a valid search warrant which authorized them to search the apartment for marijuana, L.S.D., and any "vessels, implements, and furniture used in connection with the manufacture, production, storage, or dispensing" of these drugs. The juvenile's purse properly can be characterized as a "vessel" which might be used for the "storage" of L.S.D. or marijuana. The purse was "large enough to contain the contraband or evidence that [the officers] [were] looking for," *Evans*, 92 F.3d at 543, and was a place "where [drugs and paraphernalia] might reasonably [have been] expected to be secreted." *Press*, 633 P.2d at 489. The purse also was likely to contain "articles of personal property tending to establish the identity of the person in control of the contraband." Therefore, applying the general principles discussed in *Ross*, *Press*, and *Lot 23* to the express language of the search warrant in this case, we hold that the officer's search of the purse was authorized by the search warrant.

The juvenile argues that these cases are inapposite because the juvenile did not reside at the apartment and was not named in the warrant. The juvenile cites *People v. Lujan*, 174 Colo. 554, 484 P.2d 1238 (1971), for the proposition that personal property of a guest on the premises when a search warrant concerning those premises is executed is not subject to search without some independent probable cause. In *Lujan*, this court considered the propriety of using a sledge hammer to break down a door and gain entry in order to execute a valid search warrant. *Id.* at 557, 484 P.2d at 1240. A secondary issue that was resolved by the *Lujan* court was whether evidence seized from the purse of a guest on the premises should be suppressed. Without citing authority, the *Lujan* court held that the guest's purse was not subject to search under the search warrant issued in

that case. *Id.* at 560, 484 P.2d at 1241–42. The juvenile now argues that, similar to the situation in *Lujan,* she was simply a guest in the apartment covered by the search warrant. According to the juvenile, therefore, the holding of *Lujan* supports the trial court's decision in her case to suppress the evidentiary use of the mushroom found in her purse. We disagree.

Although some of the facts in this case coincide with the facts of *Lujan,* an obvious difference is that the search in *Lujan* and the search in this case were conducted under two different warrants. Because the terms of the search warrant are not set forth in the *Lujan* decision, it is impossible to examine and compare the scope and authority granted to the officers in that case to the present case. *Lujan* is plainly distinguishable because the search warrant at issue here granted a broad scope of authority including the search of "all persons found within the premises" and any "vessels" used for the storage of drugs.

■ The notion that the juvenile's status as a guest, without more, vitiates the otherwise legal search of her purse was rejected by our holding in *People v. McMillon,* 892 P.2d 879 (Colo.1995), where we considered a similar question in the context of a car search. The defendant in *McMillon* was a passenger in a car that was stopped by police because its headlights and license plate lamp were not working. *Id.* at 880. After performing a computer check and learning that the driver had two outstanding warrants, the officer arrested the driver. *Id.* In the course of making the arrest, the officer noticed a syringe between the driver's seat and the console of the car. *Id.* The officer proceeded to search the car, along with two purses that were located on the front seat. In the purse owned by the passenger, the officer found two clear baggies with a white powder and another bag with a white rock, all of which were later tested and found to be cocaine. *Id.* The passenger was convicted of unlawful possession of a controlled substance in violation of section 18–18–204, 8B C.R.S. (1994 Supp.).

The court of appeals reversed the passenger's conviction, holding that the search of her purse was illegal and that the evidence seized from the purse should have been suppressed. *McMillon,* 892 P.2d at 881. On certiorari, we reversed and remanded the case back to the court of appeals with directions to reinstate the judgment of conviction. *Id.* at 885. Relying in part on the United States Supreme Court holding in *Ross,* we concluded that the officer had probable cause to search the entire vehicle under the automobile exception and that no separate finding of probable cause was necessary to search each closed container within the vehicle. *Id.* at 883. Thus, we held that the probable cause to search the vehicle for drugs included a search of the purse, regardless of whether the officer knew or should have known that the purse belonged to the passenger. *Id.*

In this case, the search warrant authorized the officers to search the apartment and persons found therein for drugs, paraphernalia, and any vessels used for the storage of drugs. Applying the holdings and rationales of *Ross, Lot 23,* and *Press* to this case, the scope of the valid warrant clearly included the search of the purse. As stated in *Ross:*

> When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

*Ross,* 456 U.S. at 821, 102 S.Ct. at 2171. The juvenile's argument that her status as a guest in the apartment requires an additional determination of probable cause is contrary to the plain language of the warrant itself and the rationale of *McMillon.* Therefore, we hold that the search of the purse was legal and reverse the trial court's decision to suppress the evidence found in it.

### III.

The People also contend that the district court erred in suppressing the juvenile's statement concerning her ownership of the

purse. According to the People, the officer's general inquiry directed to all four individuals as to the ownership of the purse was not interrogation because the officer at that time was not aware of the fact that the purse contained contraband. Thus, according to the People, the officer did not know, nor should she have known, that the question might elicit an incriminating response. We disagree.

Under *Miranda*, an individual subjected to custodial interrogation by police must be advised of certain rights before questioning begins. The police must advise the individual that she has the right to remain silent, that any statement she makes can be used against her, and that she has a right to the presence of either a retained or an appointed attorney. *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. As applied to juveniles, these warnings have been codified in section 19–2–210, 8B C.R.S. (1996 Supp.), with the additional requirement that a juvenile must be accompanied by her parent, guardian, or legal or physical custodian during the interrogation. *People v. T.C.*, 898 P.2d 20, 25 (Colo.1995); *People in the Interest of J.C.*, 844 P.2d 1185, 1189 (Colo. 1993). The remedy for violation of either *Miranda* or section 19–2–210 is suppression of the obtained statements. *T.C.*, 898 P.2d at 25.

In this case, both the People and the juvenile agree that the juvenile was in custody when the statement concerning her ownership of the purse was made. The juvenile was handcuffed and detained in the living room of the apartment. Further, according to the testimony of Officer Shires, the juvenile was not free to leave. Therefore, the only issue to be resolved here is whether the officer's question concerning the ownership of the purse constituted interrogation.

For the purposes of *Miranda*, an interrogation includes both express questioning and "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). Under *Innis*, any statement that the prose-

cution may seek to introduce at trial, whether inculpatory or exculpatory, is considered an "incriminating response." *Id.* at 301, n. 5, 100 S.Ct. at 1690, n. 5. In this case, the juvenile's statement concerning her ownership of the purse was an incriminating response. The purse contained a controlled substance and the prosecution seeks to introduce the statement of ownership at trial. Therefore, we now must decide whether the officer who asked about the purse's ownership should have known that such a question was likely to elicit an incriminating response.

In this case, the officers were executing a valid search warrant for drugs and drug paraphernalia. Therefore, the officers had probable cause to believe that drugs were in the apartment or in containers found within the apartment. As discussed in Part I of this opinion, since the purse was found within the apartment, the officers were authorized to search the purse pursuant to the search warrant. In fact, as evidenced by the subsequent actions of Officer Shires, the officer clearly intended to search the purse after discovering it in the bedroom. It is within the context of these facts that Officer Shires inquired of the detained individuals, including the juvenile, "Whose purse is this?"

In *People v. Mack*, 895 P.2d 530, 533 (Colo. 1995), this court considered a similar situation involving the ownership of a set of keys to a hotel room. In *Mack*, officers suspected that drugs were being sold out of a hotel room (room 302). In the course of their investigation, the officers detained the defendant and received consent to search his person. As a result of that search, the officers found marijuana, $120 in cash, a set of car keys and a hotel room key for room 302. Prior to giving a *Miranda* advisement, an officer asked the defendant, referring to the hotel room key, "Is this your key?"

One of the issues we were asked to resolve in *Mack* was whether the officer's question concerning the ownership of the key was an "interrogation." After articulating the rule expressed in *Innis*, we held that the officer's question was designed to elicit an incriminating response and therefore constituted a custodial interrogation without the benefit of a *Miranda* warning. *Mack*, 895 P.2d at 535.

Therefore, we held that the district court had properly suppressed the defendant's pre*Miranda* response. *Id.* at 535–36.

The facts of *Mack* and the case here are similar in many important respects. In both cases, the officers suspected, without knowing, that drugs would be found in the place or container at issue. In *Mack*, the officers had received reports that drugs were being sold out of room 302. In the present case, the officers obtained a search warrant based on probable cause to believe that drugs would be found in the apartment, which included any containers found in it. In both *Mack* and the present case, the fact that the officers were searching for drugs supports the conclusion that any question concerning the ownership or control of illegal drugs, or containers which might hold those drugs, clearly is designed to elicit an incriminating response. The argument that the officers in both cases did not actually *know* that drugs would be found does not obviate the fact that the officers should have known that such a question could elicit an incriminating response. Therefore, as in *Mack*, we find that Officer Shires's question concerning ownership of the purse constituted "interrogation" without the benefit of a *Miranda* advisement.

At least two circuits of the federal courts of appeals have reached the same conclusion under similar circumstances. For example, in *United States v. Smith*, 3 F.3d 1088 (7th Cir.1993), the Court of Appeals for the Seventh Circuit distinguished between an inquiry regarding consent to search and an inquiry as to ownership. In *Smith*, the defendants were detained after the police stopped the taxi cab in which they were riding. *Id.* at 1092–93. After being placed in custody, one of the defendants was asked whether a particular bag found in the cab was his. *Id.* at 1093. The officer also asked for and received consent to search the bag. *Id.* Partly as a result of the evidence obtained in that search, the defendant was charged and convicted of conspiring to possess cocaine base with intent to distribute. *Id.*

One of the issues on appeal in *Smith* was whether the officer's question concerning ownership of the bag constituted an interro-gation for *Miranda* purposes. While pointing out that a request to search does not amount to interrogation, the *Smith* court held that "[w]here the question goes beyond a request for consent and inquires as to the ownership of that which is searched, the inquiry crosses the threshold into testimonial incrimination and is therefore barred unless the safeguards of *Miranda* have been put in place." *Id.* at 1098. A rationale articulated by the *Smith* court was that the officers did not know who owned the various bags in the trunk of the taxi and were therefore seeking evidence that surely had the capacity to incriminate. *Id.* We find this explanation for the officer's inquiry in *Smith* equally applicable to Officer Shires's inquiry in the present case. At the time of the inquiry, Officer Shires did not know who owned the purse and therefore was seeking evidence that she should have known might be incriminating.

A number of other jurisdictions similarly have held that custodial questioning concerning the ownership of an item to be searched is interrogation for *Miranda* purposes. *See United States v. Henley*, 984 F.2d 1040, 1043 (9th Cir.1993)(inquiry regarding ownership of vehicle was likely to elicit an incriminating response); *United States v. Monzon*, 869 F.2d 338, 342 (7th Cir.)(officer's question regarding ownership of car was likely to elicit incriminating response and cannot be asked absent *Miranda* warnings), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989); *see also Lornitis v. State*, 394 So.2d 455 (Fla.Dist.Ct.App.1981)(instructing defendants to identify personal items in cargo area of truck which contained marijuana bails was reasonably likely to elicit incriminating responses); *State v. Rossignol*, 627 A.2d 524, 526 (Me.1993)(inquiry into the ownership of vehicle found in the middle of the road was reasonably likely to elicit incriminating response).

Consistent with the general rule articulated by the United States Supreme Court in *Innis*, we hold that under the facts of this case, the juvenile could not be questioned concerning the ownership of the purse unless she was properly advised under *Miranda* and the requirements of section 19–2–210, 8B C.R.S. (1996 Supp.) were met. Because the

police were authorized to search the purse pursuant to the search warrant and the juvenile was in custody, we find that the officer should have known that her question concerning the ownership of the purse was likely to elicit an incriminating response. Therefore, we affirm the trial court's decision to suppress the statement made by the juvenile at the apartment.

## IV.

Accordingly, we affirm in part, reverse in part, and remand the case to the trial court with directions.