**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Nathan Deshawn WARRICK,**
**Defendant–Appellant.**

**No. 09CA2783.**

Colorado Court of Appeals,
Div. VI.

Oct. 27, 2011.

John W. Suthers, Attorney General, William G. Kozeliski, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Lynn M. Noesner, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge LOEB.

Defendant, Nathan Deshawn Warrick, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of a weapon by a previous offender (POWPO) and harassment. We affirm.

## I. Background and Procedural History

This case stems from an incident in December 2008 between defendant and a woman with whom he had a long relationship and with whom he was sharing an apartment at the time. In the course of investigating this incident, police found an assault rifle in a car registered to defendant's mother that defendant had been using. In 2004, defendant had been convicted of conspiracy to commit robbery, a class 5 felony.

Defendant was charged with POWPO, obstructing a police officer, menacing, and harassment. The menacing charge was dismissed prior to trial. Following a jury trial, defendant was acquitted of the obstruction charge but was convicted of POWPO and harassment. On appeal, his contentions relate solely to the POWPO conviction, specifically the prosecution's evidence introduced to prove the fact of his prior conviction in 2004,

which is an element of POWPO. *See* § 18–12–108(1), C.R.S.2011.

As pertinent to the issues in this appeal, at the start of trial, defendant moved to suppress testimony from the prosecution's expert witness, whom the prosecution planned to use to prove defendant's prior conviction for the POWPO charge. Defendant argued, and the trial court agreed, that the prosecution had failed to endorse its expert in accordance with Crim. P. 16. Because of this discovery violation, the trial court gave the prosecution two options: continue the trial to a later date, or proceed to trial without the expert's testimony.

The prosecution chose to proceed to trial. However, the prosecutor asked the trial court to rule on the admissibility of documentary evidence that he intended to use to prove defendant's prior conviction in lieu of the now-suppressed expert testimony, specifically, two booking reports of defendant's prior arrests and the mittimus of his prior conviction for conspiracy to commit robbery.

Over defendant's objections, the trial court admitted the booking reports and the mittimus into evidence during the testimony of another prosecution witness, a police officer. During his testimony, and over defendant's continued objections, the police officer described the booking reports and the mittimus and also identified defendant from photographs on the booking reports.

On appeal, defendant challenges the trial court's admission of the booking reports, the mittimus, and the police officer's testimony on various grounds.

## II. Admission of the Booking Reports and Mittimus

Defendant raises several evidentiary contentions challenging the admission of the booking reports and mittimus. Specifically, he contends that these documents were not sufficiently authenticated, that they were hearsay not subject to any exception, and that they violated his confrontation rights. We reject defendant's contentions in turn.

■ A trial court's evidentiary rulings are reviewed for abuse of discretion and will not be disturbed unless the ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Butler,* 224 P.3d 380, 386 (Colo.App.2009).

## A. Authentication

Defendant first contends that the trial court abused its discretion in admitting the booking reports and the mittimus because they were not sufficiently authenticated. We disagree.

■ The requirement of authentication as a condition precedent to admissibility is satisfied if there is evidence sufficient to support a finding that the item is what its proponent claims. CRE 901(a); *People v. Gregg,* — P.3d ——, ——, 2011 WL 2899622 (Colo.App. 2011); *People v. Crespi,* 155 P.3d 570, 573 (Colo.App.2006). Whether a proper foundation for authenticity has been established is a matter within the sound discretion of the trial court, whose decision will not be disturbed absent an abuse of discretion. *Crespi,* 155 P.3d at 573–74. Accordingly, a trial court should allow physical evidence to be presented to the jury if a reasonable jury could decide the evidence is what its proponent claims it to be. *Id.* at 574.

### 1. The Booking Reports

Defendant first contends the trial court erred in finding that the booking reports were self-authenticating under CRE 902(4).

Although we agree with the trial court that the booking reports were sufficiently authenticated, we base our conclusion on different reasoning. *People v. Quintana,* 882 P.2d 1366, 1371 (Colo.1994); *People v. Gonzales–Quevedo,* 203 P.3d 609, 612 (Colo.App.2008) (a trial court's decision may be upheld on any ground supported by the record, even if that ground was not articulated or considered by the trial court).

We agree with the People that the booking reports were separately admissible as public records under CRE 901(b)(7). Under CRE 901(b)(7), public records can be authenticated by evidence showing that the public record "is from the public office where items of this nature are kept." This fact can be established with a certificate executed by the appropriate custodian of records. *See People v.*

*Martinez,* 83 P.3d 1174, 1179 (Colo.App.2003) ("The prosecution may also carry its burden of proof by using certified copies of public records or documents which are admissible as public records under CRE 901(b)(7). . . .").

■ Here, the booking reports contained a certification from the Arapahoe County Sheriff's Office that was signed by the custodian of records. This certification was sufficient evidence to authenticate the booking reports as public records under CRE 901(b)(7). *See* CRE 901(a) ("The requirement of authentication . . . is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."). It is immaterial that, in making this sufficiency determination, the trial court relied on the certification statement, which is hearsay. *See* CRE 104(a) (the court is not bound by the rules of evidence, except those with respect to privileges, when making admissibility determinations). Therefore, the booking reports were sufficiently authenticated as public records under CRE 901(b)(7). *See People v. Deskins,* 904 P.2d 1358, 1362 (Colo.App. 1995) (record of defendant's conviction in Kansas was sufficiently authenticated as a public record because it contained his name and identification number), *aff'd in part and rev'd in part on other grounds,* 927 P.2d 368 (Colo.1996); *see also Gregg,* —— P.3d at ——. Accordingly, we perceive no abuse of discretion in the trial court's ruling that the booking reports were sufficiently authenticated.

Because we conclude that the booking reports were admissible as public records under CRE 901(b)(7), we need not address whether this evidence would be separately admissible under CRE 902. *See People v. Kyle,* 111 P.3d 491, 505 (Colo.App.2004).

### 2. The Mittimus

Defendant also contends that the certification on the mittimus was deficient because the signer did not attest to his or her official title and did not certify that the judge's signature on the mittimus was authentic. We disagree.

Under CRE 902(4), a certified copy of a public record is self-authenticating when it is certified as correct by the record's custodian, and the certification complies with CRE 902(1), (2), or (3). To comply with CRE 902(1), the record must bear a seal.

■ The trial court found the mittimus self-authenticating under CRE 902(4), with no objection from defense counsel. Our review of the mittimus confirms the trial court's ruling. It is certified, signed, and bears the seal of the Arapahoe County District Court. CRE 902(1) and (4) require nothing more. Accordingly, there was no abuse of discretion.

### B. Hearsay

Defendant also contends that the booking reports and the mittimus were hearsay and that the trial court abused its discretion in admitting them under the public records exception. We are not persuaded.

Defendant's booking reports list his basic biographical information, such as his age and date of birth, and his arrest dates. They also contain his booking photographs. The mittimus also includes defendant's date of birth along with information relating to defendant's prior conviction for conspiracy to commit robbery, including the statute under which he was convicted and the level of his offense. The People concede these documents are hearsay when offered to prove the truth of what they assert and are inadmissible unless an exception applies. *See* CRE 801, 802.

CRE 803(8) provides an exception to the hearsay rule for public records. The rule states, in pertinent part:

> Unless the sources of information or other circumstances indicate lack of trustworthiness, records . . . of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel . . . [are not excluded by the hearsay rule].

The trial court found the booking reports and mittimus admissible under both CRE 803(8)(A) and (B). We discern no abuse of discretion in the trial court's ruling.

#### 1. CRE 803(8)(A)

Under CRE 803(8)(A), records of public offices or agencies setting forth "the activities of the office or agency" are admissible despite their hearsay character.

█ We agree with the trial court that the booking reports and the mittimus set forth the activities of the Arapahoe County Sheriff's Department and the Arapahoe County District Court, respectively. *Cf. People v. Carrasco*, 85 P.3d 580, 583 (Colo.App.2003) (charging document set forth the activities of the Denver District Attorney's office and thus was admissible under CRE 803(8)(A)).

Moreover, the documents raise no trustworthiness concerns because they were prepared solely for administrative purposes by officials whose only motivation was to mechanically register unambiguous factual matters. Accordingly, we perceive no abuse of discretion.

#### 2. CRE 803(8)(B)

Defendant also contends that the trial court abused its discretion in admitting the booking reports under CRE 803(8)(B). Specifically, he argues that CRE 803(8)(B) bars admission of the documents because they were prepared "by police officers and other law enforcement personnel" and were used against him in a criminal case. We disagree.

Initially, we note that, on appeal, defendant limits his CRE 803(8)(B) argument to the two booking reports and makes no such argument with respect to the mittimus.

In admitting the documents under CRE 803(8)(B), the trial court relied on a distinction drawn from federal cases interpreting Fed.R.Evid. 803(8)(B), the Colorado rule's federal counterpart. Specifically, the trial court found persuasive federal authority permitting admission of routinely prepared nonadversarial reports, such as charging documents, despite their preparation by law enforcement personnel. The court reasoned that routinely prepared administrative documents do not present the same reliability and trustworthiness concerns as do investigative reports. We agree with the trial court's analysis.

Because no reported Colorado decisions address this issue under CRE 803(8)(B), and because CRE 803(8) and Fed.R.Evid. 803(8) are nearly identical, we consider federal case law interpretations persuasive. *See People v. Medina*, 72 P.3d 405, 410 (Colo.App.2003).

By its terms, CRE 803(8)(B) excludes from the public records exception any "matters observed by police officers and other law enforcement personnel" in criminal cases. The booking reports seemingly fall into that exclusionary category, because they contain matters observed by law enforcement personnel (specifically, defendant's biographical information and the dates of his arrests), and they were admitted against him in a criminal case. Nevertheless, we disagree with defendant's contention that CRE 803(8)(B) categorically excludes all documents prepared, no matter how trivial.

As noted by the trial court, federal circuit courts have consistently and uniformly ruled that booking sheets and other similar documents are admissible under Fed.R.Evid. 803(8)(B). For example, in *United States v. Dowdell*, 595 F.3d 50 (1st Cir.2010), the court considered whether a police booking sheet was admissible under Fed.R.Evid. 803(8)(B). The court found that it was, concluding that "ministerial, non-adversarial information is admissible under Rule 803(8)(B)." *Id.* at 72. The court relied on the history of the rule's enactment, which made clear that the purpose of Rule 803(8)(B) was only to bar investigative reports prepared by the police for the prosecution of a specific defendant:

> [T]he reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases.

*Id.* at 70 (quoting S.Rep. No. 93–1277, at 17 (1974), reprinted in (1974) U.S.C.C.A.N. 7051, 7064). The court found that the booking sheets did not raise the same trustworthiness concerns as investigative reports, because booking sheets simply show that an arrest took place, not the events leading up to it. *Id.* at 72. Other federal circuit courts

have reached the same conclusion. *See United States v. Harris,* 557 F.3d 938, 941 (8th Cir.2009) (Fed.R.Evid. 803(8)(B) "does not bar the admission of records concerning routine and unambiguous factual matters"); *United States v. Weiland,* 420 F.3d 1062, 1074–75 (9th Cir.2005) (admitting Department of Corrections packet containing defendant's fingerprints and photographs because they were records of "routine and nonadversarial matters"); *United States v. Quezada,* 754 F.2d 1190, 1193–94 (5th Cir.1985) (admitting INS form containing arrest and deportation information because officials' only motivation was to "mechanically register an unambiguous factual matter").

■ We find the reasoning of these cases persuasive and applicable here. Defendant's two booking sheets are inherently reliable. They raise no concerns regarding potential perception biases, because, unlike investigative reports, they contain facts, not the subjective findings or observations of police officers made during criminal investigations. Nor do the booking sheets raise any trustworthiness concerns. *See Gregg,* —— P.3d at —— (citing *Weiland* and concluding there was no reason to believe court records of the defendant's prior conviction in California lacked trustworthiness). Rather, they are documents routinely prepared in a non-adversarial setting by officials whose only motivation is to accurately and efficiently record uncontroversial information. Therefore, these documents fall outside CRE 803(8)(B)'s exclusionary purview and are admissible as public records.

Accordingly, we perceive no abuse of discretion in the trial court's ruling that the booking reports were admissible as public records under CRE 803(8)(B).

## C. Confrontation

Defendant next contends that admission of the booking reports and the mittimus violated his confrontation rights under the United States and Colorado Constitutions. We disagree.

The right to confront and cross-examine witnesses is guaranteed by the Sixth Amendment and by Colorado Constitution article II, section 16. *People v. Russom,* 107 P.3d 986, 992 (Colo.App.2004). This right is triggered only when the defendant is denied the opportunity to confront (or cross-examine) "testimonial" statements admitted against him. *Crawford v. Washington,* 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *People v. Vigil,* 127 P.3d 916, 921 (Colo.2006); *People v. Fry,* 92 P.3d 970, 976–77 (Colo.2004).

Whether a statement is testimonial is a question of law subject to de novo review. *People v. Trevizo,* 181 P.3d 375, 378 (Colo. App.2007).

In *Crawford,* the Supreme Court described, without adopting, a "core class of 'testimonial' statements," including "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 541 U.S. at 51–52, 124 S.Ct. 1354.

■ Here, the booking reports and mittimus were not created to establish a material fact at any future criminal proceeding. Rather, they were created for routine administrative purposes. *See People v. Moore,* —— P.3d ——, ——, 2010 WL 5013681 (Colo.App. 2010) *(cert. granted* Sept. 26, 2011) (holding that documents such as court registers of actions, charging documents, mittimuses from other cases, fingerprint sheets and photographs prepared and kept by law enforcement agencies, were not testimonial and did not trigger a defendant's confrontation rights). We agree with the division's conclusion in *Moore* and similarly conclude that the booking reports and the mittimus here were not "testimonial" under *Crawford* and did not trigger defendant's confrontation rights. *See Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 324, 129 S.Ct. 2527, 2539–40, 174 L.Ed.2d 314 (2009) ("[P]ublic records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.").

Accordingly, the trial court did not err in ruling that admission of the booking reports

and mittimus did not violate defendant's confrontation rights.

Finally, because we conclude that the trial court did not abuse its discretion in admitting the three challenged documents, we need not address the parties' arguments regarding whether admission of these documents was harmless.

### III. Police Officer's Testimony

Defendant makes two separate contentions related to the police officer's testimony. First, he contends the trial court abused its discretion by permitting the police officer to give lay opinion testimony. Second, he contends the trial court abused its discretion by permitting the police officer to identify him from his booking report photographs. We reject both contentions.

### A. Standard of Review

We review a trial court's rulings on evidentiary issues for abuse of discretion. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Veren,* 140 P.3d 131, 136 (Colo.App. 2005).

### B. Expert Testimony

Defendant first contends the trial court abused its discretion when it permitted the police officer to testify that conspiracy to commit robbery is a class 5 felony and that "F5" stands for class 5 felony. We are not persuaded.

During direct examination of the police officer, the following exchange occurred:

[Prosecution]: Based upon your experience in filing all these cases, what level offense is a robbery?

[Defense counsel]: Objection, Judge, Rule 702, Colorado Rules of Evidence.

THE COURT: Overruled.

[Police officer]: Class four felony.

[Prosecution]: How about a conspiracy to commit a robbery?

[Defense counsel]: Objection, Judge, Colorado Rule 702 of Colorado Rules of Evidence.

THE COURT: Overruled.

[Police officer]: Conspiracy would be one less which would be an F5.

[Prosecution]: That stands for class five felony?

[Police officer]: Correct.

Whether the trial court abused its discretion in admitting the police officer's testimony depends on whether admission was proper under CRE 701, because he had not been qualified as an expert under CRE 702. *Veren,* 140 P.3d at 136.

Under CRE 701, a non-expert witness may testify to opinions or inferences so long as they are

(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Police officers regularly, and appropriately, offer testimony under CRE 701 based on their perceptions and experiences. *People v. Stewart,* 55 P.3d 107, 123 (Colo.2002); *Veren,* 140 P.3d at 136. Police officer testimony becomes objectionable when what is essentially expert testimony is improperly admitted under the guise of lay opinions. *Stewart,* 55 P.3d at 123.

In determining whether testimony is lay or expert, courts should consider "whether the opinion results from 'a process of reasoning familiar in everyday life,' or 'a process of reasoning which can be mastered only by specialists in the field.'" *People v. Rincon,* 140 P.3d 976, 983 (Colo.App.2005) (quoting Fed.R.Evid. 701 advisory committee note). Lay witness opinion testimony is only proper if the "'opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person.'" *Id.* at 982 (quoting *LifeWise Master Funding v. Telebank,* 374 F.3d 917, 929 (10th Cir.2004)). When deciding whether an opinion is one "'which could be reached by any ordinary person,' courts consider whether ordinary citizens can be expected to know certain information or to have had certain experiences." *Id.* at 983; *see also Veren,* 140 P.3d at 139

(finding police officer testimony improperly admitted as lay testimony when it was based on police training and experience an ordinary citizen would not have).

■ Initially, we agree with the People that the police officer's testimony at issue here probably was not an "opinion" in the first instance, rendering the analysis under CRE 701 inapplicable. *See Webster's Third New International Dictionary* 1582 (2002) ("opinion" means "a view, judgment, or appraisal formed in the mind about a particular matter"). Rather, the police officer testified to facts, specifically those publicly available in the Colorado Revised Statutes of which the trial court could have taken judicial notice. *See Massey v. People*, 649 P.2d 1070, 1073 (Colo.1982) (trial court can properly take judicial notice of the felony level of crimes listed on a mittimus). The police officer expressed no "view, judgment, or appraisal" on the statutes' applicability or meaning, but merely stated what is unarguably true about the crime of conspiracy to commit a robbery: it is a class 5 felony. *See* §§ 18–2–206, 18–4–301, C.R.S.2011.

■ Nonetheless, even assuming the police officer's testimony consisted of his "opinion," we conclude it was not expert testimony within the meaning of CRE 702. The police officer's testimony was not based on his "specialized knowledge" or a "process of reasoning which can be mastered only by specialists in the field." Instead, his testimony that conspiracy to commit a robbery is a class 5 felony "could be reached by any ordinary person" capable of looking up the applicable provision in the Colorado Revised Statutes. Although the officer was undoubtedly more familiar with the criminal code than an average person would be, the substance of his alleged opinion could have been reached by anyone through a "process of reasoning familiar in everyday life": namely, looking something up in a book.

Accordingly, we perceive no abuse of discretion in the trial court's admission of this testimony.

## C. Identification Testimony

Defendant next contends the trial court abused its discretion and committed plain error requiring reversal of his conviction by admitting the police officer's testimony identifying him. We disagree.

At trial, the police officer was asked to look at defendant's booking report photographs and identify defendant from those images. In that regard, the police officer testified as follows:

[Prosecution]: Now, there is a photograph on Exhibit 9; is there not?

[Police officer]: That is correct.

[Prosecution]: The person in that photograph, have you seen that person before?

[Police officer]: I have.

[Prosecution]: Could you please point him out to us and tell us what he's wearing?

[Police officer]: The black male with the black shirt with white stripes.

[Prosecution]: Could you take a look at People's Exhibit 10 on that exhibit? ... Is there a photograph on that exhibit?

[Police officer]: There is.

[Prosecution]: The person in that photograph on People's Exhibit 10, have you seen him before?

[Police officer]: Yes, I have.

[Prosecution]: Do you see him in the courtroom today?

[Police officer]: Yes, he is the black male with the black shirt with white stripes.

[Prosecution]: I'd ask the Court to—I ask the record to reflect that the witness has identified the defendant.

THE COURT: The record will reflect that witness has identified the defendant twice.

Further, the police officer also testified as follows:

[Prosecution]: Throughout the course of your investigation of this case did you ever have an opportunity to come into contact with [defendant]?

[Police officer]: Yes, I did.

[Prosecution]: And in that—in that contact you've been able to get a good look at ... Mr. Warrick against whom you filed the case?

[Police officer]: Yes, I did.

. . . .

[Prosecution]: Could you please point him out to us and tell us what he's wearing?

[Police officer]: He's wearing the black shirt with the white stripes on it.

Defendant did not object to any of this identification testimony at trial. Thus, we review for plain error. *People v. Miller*, 113 P.3d 743, 749–50 (Colo.2005). Plain error is error that is both obvious and substantial, and undermines the fundamental fairness of the proceeding so as to cast serious doubt on the reliability of the judgment of conviction. *Id.* at 750.

▉ Generally, a lay witness may testify regarding the identity of a person depicted in a photograph if the witness is in a "better position" than the jurors to determine whether the image is that of the defendant. *Robinson v. People*, 927 P.2d 381, 384 (Colo. 1996). This requirement is satisfied so long as the witness is "personally familiar" with the defendant. *See id.*

▉ Here, we perceive no error, let alone plain error, in the admission of the testimony. The police officer testified that he had come into contact with defendant during his investigation and affirmed that he had gotten a "good look" at him during that period. Accordingly, the officer was in a better position than the jurors to identify defendant because he was, at least superficially, personally familiar with him. *See id.*

Moreover, any error in the admission of this testimony was not so substantial as to cast serious doubt on the reliability of the judgment of conviction. Defendant did not dispute at trial that he was the person depicted on the booking reports, nor does he make such an argument on appeal. Further, as noted by the People, the prosecution urged the jurors in closing argument to use their own judgment in deciding whether defendant was the man pictured in the exhibits. Thus, we conclude there was no plain error requiring reversal of the conviction.

The judgment is affirmed.

Judge TERRY and Judge RICHMAN concur.