2014 CO 36

**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Lynette WEBB, Defendant–Appellee.**

**Supreme Court Case No. 14SA37**

Supreme Court of Colorado.

May 19, 2014

Attorneys for Plaintiff–Appellant: Thom K. LeDoux, District Attorney, Eleventh Judicial District, Stacey L. Turner, Deputy District Attorney, Cañon City, Colorado

Attorneys for Defendant–Appellee: The Marquez Law Office, P.C., Ernest F. Marquez, Salida, Colorado

JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶ 1 In this interlocutory appeal we consider whether the trial court erred when it suppressed evidence that the police found in Defendant–Appellee Lynette Webb's purse. A parole officer and a detective initially visited Webb's adult son, A.W., at her house and found spoons with methamphetamine residue

beneath A.W.'s bed and a syringe that tested positive for methamphetamine in a visitor's backpack. The detective also believed that A.W. and the visitor were under the influence of methamphetamine during the home visit. Based on this evidence, the police obtained a warrant to search the house and all personal property within it, and upon executing the warrant, they identified straws with methamphetamine residue in Webb's purse. The trial court found that it was unreasonable for the police to search Webb's purse, which was located in her bedroom at the time of the search, because Webb had a heightened expectation of privacy in her purse and because it was unlikely that A.W. would hide contraband in his mother's purse. For these reasons, the trial court granted Webb's motion to suppress the evidence that the police recovered from her purse.

¶2 We conclude that the trial court applied the wrong analysis. Once a lawful search warrant is issued, the scope of the search is defined by the scope of the warrant rather than an individual's expectation of privacy in any particular area or item. Here, the search warrant authorized the police to search the house and all personal property within it for methamphetamine and methamphetamine paraphernalia. We hold that, because the purse was found in a room to which A.W. had access and because the purse was a container in which A.W. could have reasonably hidden contraband, the search of Webb's purse was within the scope of the search warrant. We therefore reverse the trial court's order suppressing the evidence that the police found in Webb's purse and remand the case to that court for proceedings consistent with this opinion.

## I. Facts and Proceedings Below

¶3 Webb and her adult son, A.W., who is on parole, reside in a single-story house. The house has two bedrooms, a living room, a dining room, and a kitchen.

¶4 A parole officer and Detective Jolliffe conducted a home visit with A.W., during which Webb and a visitor were present. Webb primarily stayed in her bedroom while the visitor, at least initially, was in A.W.'s bedroom.

¶5 During the home visit, the parole officer saw evidence of drug use within the house. Specifically, in A.W.'s bedroom, the parole officer collected spoons with methamphetamine residue from beneath A.W.'s bed and found four syringes in the visitor's backpack, one of which field-tested positive for methamphetamine. In addition, according to Detective Jolliffe, both A.W. and the visitor appeared to be under the influence of methamphetamine.

¶6 Based on this evidence, Detective Jolliffe obtained a warrant to search the residence and to collect urine samples from A.W. and the visitor. As to the house, the warrant allowed the police to search the entire premises for methamphetamine and methamphetamine paraphernalia:

> WE THEREFORE COMMAND YOU, with the necessary and proper assistance to enter and search the premises ..., and all buildings and outbuildings thereon, and all property real or personal on said property, ... to search for methamphetamine, methamphetamine paraphernalia and indicia of occupancy....

¶7 After obtaining the warrant, Detective Jolliffe returned to the premises and informed Webb that she could leave during the search if she wished. Webb responded that she wanted to leave, and Detective Jolliffe and Webb proceeded to Webb's unlocked and open bedroom so that Webb could get her purse, which was on her bed. Detective Jolliffe told Webb that he would need to search her purse before she could take it with her. Inside the purse, Detective Jolliffe found Webb's driver's license and two short pieces of straw with methamphetamine residue in a zippered pocket. Upon searching her bedroom, the police also found a glass pipe with methamphetamine residue in Webb's dresser and several snort tubes with methamphetamine residue in a nondescript cloth bag on Webb's bed.

¶8 As a result, the People charged Webb with possession of methamphetamine and possession of drug paraphernalia. During pre-trial motions, Webb filed a motion to suppress the evidence that the police found in her bedroom. After conducting an eviden-

tiary hearing, the trial court concluded that the police could search all areas of the house that A.W. had access to and all items in which A.W. could have reasonably hidden contraband. Because Webb's bedroom was unlocked and open, the trial court found that the warrant allowed the police to search Webb's bedroom. According to the trial court, A.W. could have reasonably hidden contraband in Webb's dresser and in the nondescript cloth bag on her bed, and thus, the trial court denied Webb's motion to suppress the evidence found therein. However, the trial court found it unreasonable that A.W. would hide contraband in Webb's purse and that Webb had an increased expectation of privacy in her purse. Based on these findings, the trial court suppressed the evidence that the police found in Webb's purse. The People filed a motion for reconsideration and after a brief hearing, the trial court reaffirmed its original ruling. The People then filed this interlocutory appeal.

## II. Standard of Review

¶ 9 The trial court's ruling on the motion to suppress presents a mixed question of law and fact. *People v. Medina*, 25 P.3d 1216, 1223 (Colo.2001). This Court defers to the trial court's findings of fact if they are supported by competent evidence in the record. *People v. Gothard*, 185 P.3d 180, 183 (Colo.2008). We review the trial court's legal conclusions, however, de novo. *Id.*

## III. Analysis

¶ 10 To determine whether the trial court improperly suppressed the evidence that the police found in Webb's purse, we first examine the applicable law. In so doing, we determine that it was reasonable for the police to search Webb's purse. Accordingly, we conclude that the trial court should not have suppressed the straws with methamphetamine residue that the police found in Webb's purse.

## A. Scope of Search Warrants Generally

¶ 11 Both the Colorado Constitution and the Fourth Amendment to the United States Constitution protect individuals from "unreasonable searches and seizures."

Colo. Const. art. 2, § 7; U.S. Const. amend. IV. The warrant procedure "is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest." *Camara v. Mun. Court*, 387 U.S. 523, 539, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). A warrant may issue only upon probable cause, which exists when an affidavit alleges sufficient facts for a person of "reasonable caution to believe that contraband or other evidence of criminal activity is located at the place to be searched." *Henderson v. People*, 879 P.2d 383, 391 (Colo. 1994).

¶ 12 After a valid warrant is issued, when searching the specified premises, the police may search areas "under the control" of the person whose actions formed the basis for the probable cause determination. *See People v. Lucero*, 174 Colo. 278, 281, 483 P.2d 968, 970 (1971). So long as the suspect has the *ability* to access a given area, that area is "under the control" of the suspect and the police can legitimately search the area to protect against the possibility that the suspect may have hidden items in the area. *People v. Martinez*, 165 P.3d 907, 911 (Colo. App.2007). For example, the police can search bedrooms in a home, even if they are occupied by other individuals, so long as the suspect has access to those rooms:

> Where a significant portion of the premises is used in common and other portions, while ordinarily used by but one person or family, are an integral part of the described premises and are not secured against access by the other occupants, then the showing of probable cause extends to the entire premises. For example, if three persons share an apartment, using a living room, kitchen, bath and hall in common but holding separate bedrooms which are not locked, whichever one of the three is responsible for the described items being in the apartment could have concealed those items anywhere within, including the bedrooms of his cotenants.

*Id.* (quoting 2 Wayne R. LeFave, *Search and Seizure* § 4.5(b), at 529 (3d ed.1996)).

¶ 13 Within accessible areas, police can search closed containers so long as

the items named in the warrant might reasonably be found within them. *People in Interest of D.F.L.*, 931 P.2d 448, 452 (Colo. 1997). To require otherwise and insist that the police make an independent probable cause determination for each container would undermine the police's ability to promptly and efficiently execute the search:

> When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers and containers ... must give way to the interest in the prompt and efficient completion of the task at hand.

*Id.* at 452–53 (quoting *United States v. Ross*, 456 U.S. 798, 821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). For an item to be reasonably found in a container, (1) the container must be of a sufficient size to hold the item, and (2) the container must be a place where the contraband "might reasonably be expected to be secreted." *Id.* at 452 (quoting *People v. Lot 23*, 707 P.2d 1001, 1004 (Colo.App.1985), *aff'd in part, rev'd in part on other grounds,* 735 P.2d 184 (Colo.1987)). "Reasonableness," in the context of a Fourth Amendment analysis, "is measured in objective terms by examining the totality of the circumstances." *People v. Mendoza–Balderama,* 981 P.2d 150, 157 (Colo.1999) (quoting *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)).

## B. Search of Webb's Purse

¶ 14 Here, the police acted pursuant to a warrant that allowed them to search "all real or personal property" on the premises for "methamphetamine, methamphetamine paraphernalia and indicia of occupancy." Thus, the warrant's scope included Webb's bedroom. And, despite the fact that Webb's actions did not form the basis for the probable cause determination, because Webb's bedroom was unlocked and open when the police searched the residence, the police acted reasonably in concluding that A.W. had access to Webb's room. Therefore, the search of Webb's bedroom was reasonable.

¶ 15 Turning to whether the search of Webb's purse was reasonable, the first prong of the inquiry is met because the parties do not dispute that the purse was of a sufficient size such that A.W. could have hidden methamphetamine or methamphetamine paraphernalia in it. As to the second prong of our inquiry, the trial court found that it was unreasonable that A.W. would hide contraband in Webb's purse for two reasons. First, according to the trial court, Webb would likely take her purse with her when she leaves the house, making it unlikely that A.W. would have the opportunity to hide something in it. Second, the trial court concluded that Webb would likely look for things in her purse multiple times a day and notice anything unusual, making it unlikely that A.W. would want to hide something in her purse. Webb argues that we should give these "factual findings" deference. However, the question of objective reasonableness is a question of law that we review de novo. *People v. Minor,* 222 P.3d 952, 955 (Colo. 2010); *see also People v. McKinstrey,* 852 P.2d 467, 472 n. 6 (Colo.1993). We therefore do not give deference to the trial court's conclusions as to what may be objectively reasonable.

¶ 16 In determining whether it was objectively reasonable for A.W. to hide contraband in Webb's purse, we note that this Court has previously addressed whether it is objectively reasonable for a suspect to secret illegal drugs in someone else's purse. *D.F.L.*, 931 P.2d at 451–52. In *D.F.L.*, the police received information that certain named individuals were selling narcotics from an apartment. *Id.* at 450. Based on this information, the police obtained a search warrant that allowed them to search the apartment for marijuana and LSD, as well as any items that may be used to manufacture, produce, store, or dispense those drugs. *Id.* at 452. While executing the search warrant, the police searched a visitor's purse—the owner of which was not named in the warrant—and found a cigarette package that contained a dried psilocybin mushroom, a schedule I controlled substance. *Id.* at 450. In ultimately determining that the search of the purse was reasonable, this Court concluded that the purse "was a place 'where [drugs and paraphernalia] might reasonably [have been] expected to be secreted.'" *Id.* at 452

(alteration in original) (quoting *People v. Press*, 633 P.2d 489, 493 (Colo.App.1981)). In reaching this conclusion, this Court did not consider the dynamics of the relationship between the parties. *See id.* Thus, the relationship between Webb and her son was not a relevant factor for the trial court to consider when determining whether it was reasonable for A.W. to hide contraband in Webb's purse. Rather, just as it was objectively reasonable that drugs may be hidden in a visitor's purse in *D.F.L.*, it is objectively reasonable that A.W. might have hidden contraband in Webb's purse because the contraband at issue can be hidden in a purse. *Id.* ("Because marijuana, drug paraphernalia, and identifying information *can* all be secreted in a footlocker, bucket, or pitcher, the court of appeals held that 'the search of these closed containers was reasonable and not in violation of the Fourth Amendment.'" (emphasis added) (discussing and quoting *Lot 23*, 707 P.2d at 1004)).

¶ 17 Moreover, contrary to the trial court's finding that Webb had a heightened expectation of privacy in her purse, once a lawful warrant is issued, the scope of the search is defined by the scope of the warrant rather than an individual's expectation of privacy in any particular area or item. *See Maryland v. Garrison*, 480 U.S. 79, 84–85, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987) (stating that the "scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to believe that it may be found'" (quoting *Ross*, 456 U.S. at 824, 102 S.Ct. 2157)); *cf. United States v. Jacobsen*, 466 U.S. 109, 120 n. 17, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) ("A container which can support a reasonable expectation of privacy may not be searched, even on probable cause, without a warrant."). As exemplified in *D.F.L.*, when executing a valid search, purses are not treated differently than any other container. 931 P.2d at 452–53; *see also People v. McMillon*, 892 P.2d 879, 883 (Colo.1995) (holding that where police have probable cause to search a vehicle, then probable cause exists to search containers within the vehicle, including a passenger's purse). Therefore, because it was reasonable that A.W. may have hidden contraband in Webb's purse, it was reasonable for the police to search it.

## IV. Conclusion

¶ 18 Accordingly, we reverse the trial court's order suppressing the evidence that the police found in Webb's purse and remand the case to that court for proceedings consistent with this opinion.