2014 COA 155M2

The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Daryll Glenn BROWN, Defendant-Appellant.

Court of Appeals No. 11CA0556

Colorado Court of Appeals, Div. I.

Announced November 20, 2014

As Modified on Denial of Rehearing December 31, 2014

As Modified January 29, 2015

John W. Suthers, Attorney General, Jay C. Fisher, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Lynn Noesner, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE RICHMAN

¶ 1 Defendant, Daryll Glenn Brown, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree murder—felony murder, second degree murder, and burglary. We affirm the judgment and remand the case for correction of the mittimus.

## I. Background

¶ 2 The victim, defendant's ex-wife, was murdered in her home in the middle of the night. After their divorce, the victim and defendant had shared custody of their four-year-old son but lived apart. According to the prosecution, defendant entered the victim's home with a key he had kept, struck her several times with a wine bottle, and then strangled her to death. Defendant's defense at trial was that he was at his home sleeping when the murder occurred.

## II. Issues on Appeal

¶ 3 Defendant argues that his convictions must be reversed because the trial court (1) violated his right to present a defense by prohibiting him from presenting evidence about how the case was investigated by the police; (2) violated the hearsay rule and his right of confrontation by admitting hearsay statements pursuant to CRE 807; and (3) erred by failing to suppress evidence obtained when police executed a warrant for a search of his car. We disagree.

### A. Right to Present a Defense

¶ 4 Defendant argues that the trial court violated his rights by precluding him from presenting evidence tending to show that the police investigation into the case was deficient. Specifically, he contends that the court erred by (1) limiting his cross-examination of the prosecution's DNA expert about the inherent limitations of one type of DNA testing that was done and (2) not allowing him to introduce evidence, through his investigator, about the police's failure to investigate a suspicious vehicle that had reportedly been in the victim's neighborhood two days before the murder. We discern no basis for reversal.

### 1. Standard of Review and Applicable Law

¶ 5 We review for abuse of discretion the trial court's evidentiary rulings. *People v. Warrick*, 284 P.3d 139, 145 (Colo. App.2011). "A trial court abuses its discre-

tion when its ruling is manifestly arbitrary, unreasonable, or unfair." *Id.*

¶ 6 An erroneous evidentiary ruling may rise to the level of constitutional error if it deprives a defendant of his or her right to present a defense or to conduct meaningful cross-examination on material issues. *People v. Beilke*, 232 P.3d 146, 149 (Colo.App.2009). However, a defendant's right to present a defense is violated "only where the defendant was denied virtually his [or her] only means of effectively testing significant prosecution evidence." *Krutsinger v. People*, 219 P.3d 1054, 1062 (Colo.2009); *see People v. Osorio-Bahena*, 2013 COA 55, ¶ 17, 312 P.3d 247. Thus, when an evidentiary limitation does not deprive a defendant of his or her only means of testing prosecution evidence, reversal is required only if any error substantially influenced the verdict or affected the fairness of the trial. *Krutsinger*, 219 P.3d at 1064.

## 2. DNA Testing

¶ 7 The prosecution presented evidence through an expert in DNA analysis and comparison about testing that was performed at the crime scene. On direct examination, the expert testified that he had performed a type of DNA analysis known as autosomal analysis on several items from the victim's bedroom and found a DNA profile that matched hers. He also testified that due to the presence of high concentrations of female DNA, some of the items were tested by a different process, Y–STR testing, which focuses solely on male DNA found on the Y chromosome. The expert testified that Y–STR profiles are not unique to each individual, as autosomal DNA profiles are, and that all the males in a family usually have the same Y–STR profile. The expert testified that certain Y–STR profiles obtained from the crime scene matched defendant's profile.

¶ 8 Defense counsel objected that the expert's testimony might be confusing to the jury because defendant's son could have been the source of the DNA. The court overruled the objection, stating: "I think [the expert] testified to that before he started this testimony. So I don't think there's any confusion on this." Later, the expert stated that since defendant and his son both have the same Y–STR profile, defendant's son was a potential source of the Y–STR evidence that was detected in the victim's home.

¶ 9 On cross-examination, defense counsel emphasized this point:

Q: Just so the jury is completely clear on this, any Y–STR profile that you have testified about that matches [defendant], also matches [his son]?

A: That's correct. Both of them have the same Y–STR profile.

Later, defense counsel asked the expert, "So in doing just the Y–STR testing you wouldn't really have a way to exclude any females from this sample who are not [the victim]?" The prosecution objected to the question based on relevancy, stating that defendant had not sought to present any female alternate suspects. Defense counsel argued that the type of testing was relevant to show that the police investigated inadequately because they looked only for evidence confirming the presence of a male suspect. The court sustained the objection.

## 3. Suspicious Vehicle

¶ 10 The prosecution also presented evidence that during the investigation, one of the victim's neighbors reported to an investigating officer that he had seen a suspicious vehicle in the neighborhood two days before the murder. The officer who received the information checked the two possible license plate numbers provided by the neighbor against a Division of Motor Vehicles database and found that one was registered to an entity called "Jefferson Hills Corporation." Defense counsel asked the officer if he followed up by going to the Jefferson Hills Corporation, and the officer responded that he had not. Defense counsel then asked, "Do you know what Jefferson Hills Corporation is?" The officer responded, "I don't know."

¶ 11 Later, in attempting to show that the police investigation was deficient, defendant sought to present evidence through his own investigator that the Jefferson Hills Corporation was a nonprofit juvenile mental health facility that had residential clients. The prosecution objected on relevance grounds.

The court disallowed the evidence, finding that it was of marginal relevance and prejudicial.

### 4. Analysis

■ ¶ 12 On appeal, defendant contends that the questions about the limitations of DNA testing were relevant to refute the reliability of the DNA evidence presented by the prosecution and, along with the suspicious vehicle evidence, to show that the police investigation was deficient. However, we do not perceive that any error in these rulings prevented defendant from presenting a complete defense.

¶ 13 The jury was informed about the types of DNA analysis that were performed and the meaning of the results obtained. The expert explained that the matching Y-STR profiles could be attributed to defendant, his son, or any other male of the same paternal lineage. During closing argument, defense counsel emphasized the inherent limitations of the DNA testing that was done and further challenged the thoroughness of the police investigation by asking why DNA testing was not performed on certain pieces of evidence, such as a note found at the crime scene, and why police did not follow up on the report about the suspicious vehicle.

¶ 14 Defendant argues that he should have been allowed to present evidence about the type of facility the Jefferson Hills Corporation was and how easily the defense ascertained information about it, thereby again highlighting the shortcomings of the police investigation. Nevertheless, the jury heard the officer's testimony about the lack of follow-up concerning the Jefferson Hills Corporation. In addition, defense counsel argued during closing that the failure to follow up on this potential lead was another sign of the inadequacy of the investigation:

> There was no investigation as to anything dealing with Jefferson Hills Corp.

> But think about it. Two days prior there was activity suspicious enough to a neighbor that he took the step to affirmatively write down a license plate that is not associated with Daryll Brown in any way. And there's no investigation.

Moreover, based on defendant's offer of proof, any possible connection between the Jefferson Hills Corporation and the victim was merely speculative. *See People v. Davis*, 218 P.3d 718, 732 (Colo.App.2008) (concluding that exclusion of evidence did not violate defendant's constitutional rights where defendant failed to make a plausible showing of how the evidence would have been both material and favorable to her defense).

■ ¶ 15 Further, although the trial court excluded the evidence as "prejudicial" without explanation, we conclude that the evidence, incomplete as it was, could have been excluded as confusing to the jurors and misleading, and thus it was subject to exclusion under CRE 403. *See People v. Saiz*, 32 P.3d 441, 449 (Colo.2001) ("A trial court retains the discretion to assess the incremental probative value of evidence offered by a criminal defendant and to exclude even logically relevant evidence that would be more wasteful of time, confusing, or misleading than helpful to the jury."). We can affirm the trial court's evidentiary ruling on any ground supported by the record, even if that ground was not articulated or considered by the trial court. *People v. Phillips*, 2012 COA 176, ¶ 63, 315 P.3d 136.

¶ 16 Under these circumstances, we cannot say the court's rulings, even if erroneous, violated defendant's right to present a defense or any of his other rights. Nor has defendant shown that the court's rulings substantially influenced the verdict or affected the fairness of the trial since he was able to present to the jury most of the evidence underlying his contention that the police investigation was deficient and to argue the purported inadequacy in closing.

### B. Residual Hearsay Exception

¶ 17 Defendant argues that the trial court erred by admitting, under the residual exception to the hearsay rule, CRE 807, statements the victim made to her sister, her mother, and two coworkers that were not sufficiently trustworthy. He also argues that the admission of the victim's statements under the rule violated his right of confrontation and that some of the statements were not relevant. We disagree.

### 1. Standard of Review and Applicable Law

¶ 18 Trial courts have considerable discretion in determining the admissibility of evidence, including whether the residual hearsay exception applies and whether the evidence has logical relevance. *Vasquez v. People*, 173 P.3d 1099, 1106 n.7 (Colo.2007); *Medina v. People*, 114 P.3d 845, 859 (Colo. 2005). We will not disturb an evidentiary ruling on appeal unless it is manifestly arbitrary, unreasonable, or unfair. *Medina*, 114 P.3d at 859; *People v. Carlson*, 72 P.3d 411, 420 (Colo.App.2003). To the extent defendant asserts that the trial court's erroneous admission of the statements violated his confrontation rights, we review de novo. *Bernal v. People*, 44 P.3d 184, 198 (Colo.2002).

¶ 19 CRE 807 provides that a statement not specifically covered by the other hearsay rules "but having equivalent circumstantial guarantees of trustworthiness" is not excluded by the prohibition against hearsay if certain requirements are met. Under the rule, a statement that would otherwise be excluded as hearsay may be admitted if it is supported by circumstantial guarantees of trustworthiness; it is offered as evidence of material facts; it is more probative on the points for which it is offered than any other evidence which could be reasonably procured; the general purposes of the rules of evidence and the interest of justice are best served by its admission; and the adverse party had adequate notice in advance of trial of the intention of the proponent of the statement to offer it into evidence. *People v. Fuller*, 788 P.2d 741, 744 (Colo.1990); *People v. Shifrin*, 2014 COA 14, ¶ 59, 342 P.3d 506.

¶ 20 "In considering the trustworthiness of a statement, courts should examine the nature and character of the statement, the relationship of the parties, the probable motivation of the declarant in making the statement, and the circumstances under which the statement was made." *People v. Jensen*, 55 P.3d 135, 139 (Colo.App.2001); *see also Fuller*, 788 P.2d at 745. The proponent must establish the trustworthiness of the statement by a preponderance of the evidence. *People v. Preciado–Flores*, 66 P.3d 155, 164 (Colo.App.2002).

¶ 21 In addition, with regard to nontestimonial statements, the Colorado Confrontation Clause requires that "to admit nontestimonial evidence when the defendant has not had a prior opportunity of cross-examination, the prosecution must show that the declarant is unavailable and the statement bears sufficient indicia of reliability." *Compan v. People*, 121 P.3d 876, 885 (Colo. 2005). Where the testimony does not fall under a firmly rooted hearsay exception, the prosecution must show that the evidence has "particularized guarantees of trustworthiness." *People v. Fry*, 92 P.3d 970, 975 (Colo. 2004). Because "the residual hearsay exception is not a firmly rooted exception ... particularized guarantees of trustworthiness are required for statements to satisfy the Confrontation Clause under this exception." *People v. Garrison*, 109 P.3d 1009, 1012 (Colo.App.2004).

¶ 22 Under CRE 402, all relevant evidence is admissible. "To be relevant, the evidence must have the tendency to make the existence of a fact more or less probable than without the evidence." *Medina*, 114 P.3d at 859. The Colorado Rules of Evidence strongly favor the admission of relevant evidence. *People v. Czemerynski*, 786 P.2d 1100, 1108 (Colo.1990).

### 2. Statements to Sister

¶ 23 The victim's sister testified about statements made by the victim concerning her marriage to defendant and their divorce. The gist of the sister's testimony was as follows:

- defendant told the victim that "he didn't believe in divorce" and did not want the marriage to end;
- defendant told the victim "it was her fault" their marriage was falling apart;
- the victim said that her conversations with defendant "never felt like real communication";
- defendant often refused to answer or return her calls; and
- there were several instances when defendant would "explode" at the victim and "use words that told her how angry he was."

¶ 24 The prosecution offered this testimony to suggest a motive for defendant to have murdered the victim and also as res gestae. After analyzing the victim's statements to her sister under the requirements of CRE 807, the trial court determined that they were admissible. As pertinent here, the court found that since the victim was deceased, the statements were more probative than any other evidence the prosecution could procure through other reasonable efforts; the statements were reliable because they were private conversations between siblings; the statements were detailed; and the victim-declarant had personal knowledge of the events to which the statements pertained. The court further determined that the statements had particularized guarantees of trustworthiness and went to defendant's motive.

### 3. E–Mail Statement to Mother

¶ 25 The trial court also admitted the victim's e-mail correspondence with her mother sent during the marriage, including the following statement by the victim, which the victim's mother read at trial:

> He doesn't understand why our marriage has to end, he really doesn't. He said he would give up his needs for me if the tables was [sic] turned. He said he admired me for being true to myself, but also hated me for it. For this week I'm in the guest bedroom with plans to reassess for next week. He is going to get himself some therapy, I think.

¶ 26 Again, the trial court applied the requirements of CRE 807 and found that the e-mail statement was admissible. Specifically, the court found that "based on the when, where, and how, the nature and character of the statement, and the relationship of the parties, it does have circumstantial guarantees of trustworthiness," also noting that the e-mail was short but detailed. In particular, the court found defendant's use of the strong word "hate" was material. *See Jensen*, 55 P.3d at 140 ("In a homicide trial, evidence of prior threats, mistreatment, or malice by the defendant toward the victim is admissible to show the defendant's motive and culpable mental state.").

### 4. Statements to Coworkers

¶ 27 The trial court admitted statements the victim made to two coworkers with whom she regularly discussed her marriage and divorce. These statements were not significantly different from the statements the victim made to her mother and sister. One coworker testified that, according to the victim, defendant did not support her during their marriage and, after the divorce was final, called her often to say that he still wanted to be married. The victim also expressed frustration that defendant frequently did not respond to her phone calls and text messages. Another coworker testified that she met the victim for coffee or lunch several times, and they discussed her divorce. The coworker testified that a "constant theme" in the victim's interactions with defendant was his desire to persuade her to come back to the marriage. The coworker also testified that the victim saw defendant as increasingly desperate because he "could not imagine a life not being in this marriage."

¶ 28 As with the other evidence admitted under CRE 807, the trial court made the necessary findings to support its determination that the testimony was admissible.

### 5. Analysis

¶ 29 We reject defendant's contention that the statements lacked particularized guarantees of trustworthiness, if for no other reason than the requirement that we defer to the trial court's findings of fact which are supported by the record. *See People v. Mendoza–Balderama*, 981 P.2d 150, 158 (Colo.1999). "This is true even though a contrary position may find support in the record and even though we might have reached a different result had we been acting as the finder of fact." *People v. Thomas*, 853 P.2d 1147, 1149 (Colo.1993). The trial court's findings on the trustworthiness of these statements were sufficient to satisfy both CRE 807 and Colorado's Confrontation Clause.

¶ 30 Defendant cites authority from other jurisdictions for the proposition that statements made in the course of a divorce are not trustworthy or reliable because the de-

clarant has a motive to lie to tarnish the other spouse. *See, e.g., United States v. Lentz,* 282 F.Supp.2d 399, 425–26 (E.D.Va. 2002); *State v. Haili,* 79 P.3d 1263, 1279 (Haw.2003). However, we do not read these cases as standing for the broad proposition that all statements made in the context of a divorce are inherently untrustworthy, such that a trial court would abuse its discretion by finding them trustworthy for purposes of the residual hearsay exception. Not every divorce is hostile, nor every ex-spouse hateful. Rather, each case depends on the particular circumstances under which the statements were made, and the trial court must exercise its discretion when determining their admissibility. *See People v. Bowers,* 773 P.2d 1093, 1096 (Colo.App.1988).

¶ 31 Indeed, cases from other jurisdictions applying the residual hearsay exception have found statements to family members and close friends about marital matters, even in the case of a heated divorce, are trustworthy. *See McNaughton v. State,* 290 Ga. 894, 725 S.E.2d 590, 595 (2012) (trial court did not abuse its discretion by finding guarantees of trustworthiness where the murder victim made statements about her husband's hostility toward her to a close family member, placed confidence in the witness, and turned to the witness for help with personal problems); *State v. Griffin,* 834 N.W.2d 688, 693 (Minn.2013) (trial court did not abuse its discretion by admitting wife's statement to friends that defendant, her husband, was stalking her when she was with another man); *State v. Davi,* 504 N.W.2d 844, 851–52 (S.D.1993) (trial court did not abuse its discretion by admitting murder victim's statements to friends about her ex-husband; residual hearsay rule and confrontation clause requirements were met); *see also Idaho v. Wright,* 497 U.S. 805, 820, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) ("[T]he 'particularized guarantees of trustworthiness' required for admission under the Confrontation Clause must likewise be drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief.").

¶ 32 Here, there was conflicting evidence as to whether the victim's statements at issue had circumstantial guarantees of trustworthiness. The trial court was in the best position to evaluate the proffered testimony of the witnesses and to consider the circumstances under which the declarant made the particular statements. *See Osorio–Bahena,* ¶ 44. We discern no abuse of discretion in its determination that the statements were sufficiently trustworthy as to satisfy CRE 807. Moreover, the court's findings are sufficient to satisfy the Colorado Constitution's Confrontation Clause.

¶ 33 Nor are we persuaded by defendant's contention that the trial court abused its discretion by admitting the victim's statements regarding her marriage to and separation from defendant, some predating the murder by more than a year, because they were not relevant. *See People v. Welsh,* 176 P.3d 781, 790 (Colo.App.2007) ("[E]vidence that the victim wanted to end his relationship with defendant was relevant to show that defendant had a motive for killing the victim . . . .").

### C. Scope of Search Warrant

¶ 34 A day after obtaining a warrant to search defendant's vehicle, police located the vehicle in a parking lot near defendant's workplace. The police kept the vehicle under surveillance for approximately two hours. Then defendant approached the vehicle, opened the door, and placed a backpack inside. The police approached the vehicle, advised defendant that they would seize the vehicle pursuant to the search warrant, and refused to allow him to remove the backpack, despite his request to take it with him. The later search of the vehicle produced evidence obtained from the backpack that was admitted at trial.

¶ 35 On appeal, defendant does not challenge the validity of the warrant. Rather, he argues that the trial court erred by failing to suppress evidence police obtained when they executed the warrant because the search exceeded the scope of the warrant. We find no error.

¶ 36 The trial court's ruling on a motion to suppress presents a mixed question of fact and law. *People v. Webb,* 2014

CO 36, ¶ 9, 325 P.3d 566. We defer to the court's factual findings if they are supported by the record; we review de novo the court's legal conclusions. *Id.*; *see United States v. Hargus*, 128 F.3d 1358, 1361 (10th Cir.1997) ("The ultimate determination of reasonableness under the Fourth Amendment ... is a question of law which we review de novo, considering the totality of the circumstances.").

¶ 37 In executing a search warrant, police "may search the location authorized by the warrant, including any containers at that location that are reasonably likely to contain items described in the warrant." *People v. Gall*, 30 P.3d 145, 153 (Colo.2001). In addition, "the subjective motive of an executing officer is inconsequential to the seizure of items pursuant to a search warrant." *Id.* at 154; *see also Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

¶ 38 The warrant authorized a search "within the vehicle" for "[a] blackberry cell phone, e-mails, notes or letters regarding the care and custody of [defendant's son], the marriage between [defendant] and [the victim], blood, wine, fibers, hair, DNA and any clothing that may contain trace evidence." The objects seized from the backpack and admitted into evidence at trial were defendant's handwritten notes in a "Grief Recovery Notebook," including a timeline of significant events in defendant's life and a statement addressed to the victim.

¶ 39 Here, there is no dispute that the backpack was "within" the vehicle at the time it was seized; therefore, seizing it was not outside the scope of the warrant. The items found in the backpack and used at trial were within the description of the items to be searched and seized. Defendant cites no authority, nor are we aware of any, for the proposition that the police acted illegally by waiting to execute the warrant until he placed his personal property in the vehicle. *See United States v. Williams*, 10 F.3d 590, 594 (8th Cir.1993) (eight-day delay in execution of search warrant not unreasonable). Moreover, even if we assume the police intended to exceed the scope of the warrant by delaying its execution, "otherwise lawful conduct by law enforcement officers is not made illegal or unconstitutional merely because the officers' subjective intent is illegitimate." *People v. Altman*, 938 P.2d 142, 146 (Colo. 1997) (citing *Whren*, 517 U.S. at 813, 116 S.Ct. 1769).

### III. Mittimus

¶ 40 We note, sua sponte, that the mittimus reflects that the *sentences* on counts one, four, and five merge with count three. The mittimus should be corrected to note that the *convictions* on counts one, four, and five merge with count three.

### IV. Conclusion

¶ 41 The judgment of conviction is affirmed, and the case is remanded for correction of the mittimus.

JUDGE TAUBMAN and JUDGE TERRY concur.