23CA1748 Peo v Juranek 03-19-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1748
El Paso County District Court No. 23CR2020
Honorable William Bain, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Maurice Juranek,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE GOMEZ
Pawar and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 19, 2026

Philip J. Weiser, Attorney General, Grant R. Fevurly, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Daniel J. Sequeira, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Following a traffic infraction, a vehicular pursuit, and a foot chase, Maurice Juranek was charged with and convicted of failing to stop at a stop sign, vehicular eluding, and obstructing a peace officer.  Juranek now appeals the judgment of conviction.

¶ 2     On appeal, Juranek argues that there is insufficient evidence to support his conviction on the vehicular eluding charge.  He also argues that (1) the trial court erred by allowing improper expert testimony from a police officer at trial; (2) the trial court erred by allowing the prosecutor to engage in misconduct during closing argument; and (3) the cumulative effect of these errors requires reversal.  We reject his arguments and affirm the judgment.

## I.     Background

¶ 3     One afternoon, Officer Gene Drake was monitoring traffic in a residential area in a marked Colorado Springs Police Department (CSPD) vehicle.  He saw a sedan, closely followed by a pickup truck, approaching a stop sign on a two-lane road.  After the sedan came to a stop, the truck stopped suddenly just behind it.  The truck then followed the sedan through the intersection without stopping.

¶ 4     Officer Drake activated his overhead lights (which in turn activated his body-worn camera) and began following the truck.  At

1

first, the truck continued down the road without any noticeable reaction from the driver, so Officer Drake activated his sirens. The truck then accelerated, and Officer Drake notified dispatch that he was in pursuit of the truck and gave them the license plate number. The truck passed the sedan and then went around another vehicle that was stopped at a stop sign. It then made a turn and continued out of sight. At that point, Officer Drake terminated the pursuit, which had lasted roughly fifteen seconds.

¶ 5 About half an hour later, Officer Drake, responding to an investigative lead based on the truck's license plate number, arrived at a nearby townhome complex. There, he saw a pickup truck with the same license plates. As he approached, a man standing by the truck, later identified as Juranek, ran off. Officer Drake again activated his body-worn camera and chased Juranek through the townhome complex, shouting for him to stop. Officer Drake eventually apprehended Juranek and ordered him to stay put. Juranek again tried to run, so Officer Drake tased him, causing him to fall and hit his face on the concrete. Officer Drake then arrested him. A bystander filmed part of these events on his phone.

¶ 6    An ambulance took Juranek to a hospital to treat the injuries he suffered when he fell.  Another CSPD officer reported to the hospital to take custody of Juranek.  There, Juranek asked to call his girlfriend, which the officer allowed him to do.  A portion of the call was recorded by the officer's body camera.  Juranek's girlfriend told Juranek that she'd heard he "took off" from the police.  He responded, "I just didn't know they were behind me and I went through the stoplight and I left. . . .  I pulled over and I thought they were after the car in front of me or whatever and I just left."

¶ 7    At trial, Officer Drake testified, and video footage from the two officers' body cameras and the bystander's cell phone was admitted. Juranek declined to testify.

¶ 8    Juranek now appeals.

## II.    Sufficiency of the Evidence

¶ 9    Juranek first contends that there is insufficient evidence to support his conviction for vehicular eluding.  We disagree.

¶ 10    We review claims challenging the sufficiency of the evidence de novo.  *McCoy v. People*, 2019 CO 44, ¶ 63.  In doing so, we consider whether the evidence, viewed in the light most favorable to the prosecution, supports a reasonable conclusion that the

3

defendant is guilty beyond a reasonable doubt. *People v. Tomaske*, 2022 COA 52, ¶ 17. However, we "may not serve as a thirteenth juror and consider whether [we] might have reached a different conclusion than the jury." *People v. Harrison*, 2020 CO 57, ¶ 33. Thus, we will disturb the verdict only if, despite drawing every reasonable inference in favor of the prosecution, the record is unsubstantial and insufficient to support a guilty verdict beyond a reasonable doubt. *Thomas v. People*, 2021 CO 84, ¶ 10.

¶ 11    The vehicular eluding statute provides:

> Any person who, while operating a motor vehicle, knowingly eludes or attempts to elude a peace officer also operating a motor vehicle, and who knows or reasonably should know that he . . . is being pursued by said peace officer, and who operates his . . . vehicle in a reckless manner, commits vehicular eluding.

§ 18-9-116.5(1), C.R.S. 2025.

¶ 12    Juranek asserts that the evidence doesn't support findings that he (1) knew or reasonably should have known he was being pursued by a peace officer; (2) knowingly eluded or attempted to elude the officer; or (3) operated his vehicle in a reckless manner.

¶ 13    As to the first contested fact, the evidence supports a finding that Juranek knew or should have known he was being pursued.

4

Officer Drake testified that after he activated his lights and then his sirens on his CSPD vehicle, the truck accelerated and passed the sedan in front of it as well as another car before turning and driving out of sight, suggesting that the driver was aware of his pursuit. *See People v. Fury*, 872 P.2d 1280, 1283 (Colo. App. 1993) (proof of the use of police vehicle lights or sirens may assist in establishing a defendant's knowledge that they were being pursued). Also, when Juranek later spoke with his girlfriend, he indicated his belief that the officer was "after" someone, though he insisted he believed it was the car in front of him. And Juranek's flight when Officer Drake approached him at the townhome complex suggests his awareness that he'd done something wrong. *See People v. Gee*, 2015 COA 151, ¶ 26 ("Evidence of a defendant's flight may be relevant to show consciousness of guilt . . . ." (quoting *People v. Perry*, 68 P.3d 472, 475 (Colo. App. 2002))).

¶ 14     This same evidence also supports a finding that Juranek knowingly eluded or attempted to elude Officer Drake. In particular, Officer Drake's testimony suggests that although the truck's driver didn't immediately react when he activated his overhead lights, once he activated his sirens, the truck accelerated

and drove around other cars to get away. And, contrary to Juranek's later statement to his girlfriend, neither Officer Drake's testimony nor the body camera footage indicates that the truck ever stopped, pulled over, or waited for Officer Drake to go by.

¶ 15 Finally, there is sufficient evidence to support a finding that Juranek operated his vehicle in a reckless manner. *See* § 18-1-501(8), C.R.S. 2025 ("A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists."). Officer Drake testified that Juranek accelerated and drove into the oncoming traffic lane to get around the sedan ahead of him. He also testified that Juranek then went into the oncoming traffic lane again to get around another vehicle that was stopped at a stop sign, after which Juranek made a wide turn around and in front of that vehicle to make a right turn. And Juranek did all this in a residential area.

¶ 16 Thus, drawing every reasonable inference in favor of the prosecution, we cannot say that the record is unsubstantial or insufficient to support a guilty verdict beyond a reasonable doubt. *See Thomas*, ¶ 10.

### III. Police Officer Testimony

¶ 17    Juranek also contends that the trial court erred by allowing Officer Drake to give improper expert testimony under the guise of lay testimony. We're not persuaded.

### A. Additional Background

¶ 18    During his direct examination, Officer Drake gave the following testimony regarding CSPD's pursuit policy:

> [P]er [CSPD's] pursuit policy, we don't engage in vehicle chases unless it's involved in a violent felony. . . . It's intensely dangerous to chase other vehicles and potentially in public places where you or a neighborhood full of children or whatever is driving . . . so by policy effectively we don't chase unless it's a violent felony.
>
> We do call out that someone is fleeing. And then we make not the grand motion but a noticeable motion to indicate to the other people that we are not pursuing. For instance, pulling off into a cul-de-sac, turning off your lights so that the person that is fleeing you ideally will then realize that you're no longer pursuing them and they stop their very dangerous actions.

¶ 19    Later, on cross-examination, Officer Drake said,

> [T]he policy is pretty distinct about violent felonies. It's dangerous for anyone to drive a car recklessly, like people do when they flee police. So serious bodily injury is definitely a consideration.

7

¶ 20    Then, on redirect, the prosecutor engaged Officer Drake in the following line of questioning regarding the policy:

> [Prosecutor]: So it is a policy of CSPD that vehicular pursuits present hazards and life-threatening risks?
>
> [Officer Drake]: Correct.
>
> [Prosecutor]: And you as an officer have the duty to balance whether apprehension is more important than your safety or the public's safety?
>
> [Officer Drake]: Correct.
>
> [Prosecutor]: It's also the policy of CSPD to protect the public from unnecessary risk by weighing the need to apprehend a subject who flees from law enforcement against the risk of pursuit to the public, correct?
>
> [Officer Drake]: Yes, absolutely.
>
> . . . .
>
> [Prosecutor]: [T]here are limitations on when you can engage in pursuits, correct?
>
> [Officer Drake]: Correct.
>
> [Prosecutor]: You're only allowed to engage in a vehicle pursuit when you reasonably believe that the need to immediately apprehend the driver outweighs the risk the pursuit poses to the public and the officer?
>
> [Officer Drake]: Correct.

[Prosecutor]: And you also have to consider whether it's necessary to effect an arrest because that person has committed or is committing a violent felony, correct?

[Officer Drake]: Yes.

[Prosecutor]: And you reference that itself in your direct testimony when I was asking you questions earlier this afternoon?

[Officer Drake]: Right.

[Prosecutor]: The policy goes on to say that "vehicular eluding in and of itself is not a violent felony for the purposes of this policy," you're aware of that?

[Officer Drake]: Yes.

[Prosecutor]: The policy itself talks about considerations that you as an officer must make the decision on when deciding whether to engage in a pursuit. Can you tick off some of those things that you have to make that decision on in a split second?

[Officer Drake]: So generally safety for the public is just No. 1 every single time. I would not start a pursuit in a busy parking lot like a Walmart. I wouldn't start one near a school zone. In a residential zone where kids are on bikes playing on the street or something like that. I wouldn't do anything in a rush hour. There's a distinct difference between starting a pursuit at 3 a.m. on Powers when there's two cars up and down Powers and 5 p.m. on Academy at Austin Bluffs and Academy right as the schools are letting out or 4 p.m. as the schools are letting out.

So in this situation where even if it's not a particular busy hour on the road, it's still a residential zone. There are still other vehicles in the area. And, again, we don't have the violent felony to justify risking myself, anyone else on the road, or even the suspect because it is a genuine danger to get in a car chase.

. . . .

[Prosecutor]: Do you have to obtain approval from a supervisor to continue a pursuit?

[Officer Drake]: So the decision to initiate a pursuit is on the patrol officer. And a supervisor will decide whether or not to continue pursuit or just will completely flat out deny a pursuit if you call it out.

¶ 21    Finally, Officer Drake testified as follows about best practices relating to foot pursuits:

[A]s a general practice, it's best to try to minimize injury as much as humanly possible. If I — instead of issuing a taser strike on someone or jumping on them or hitting them or anything along these lines, you almost universally — unless we don't have the time to do so, it's good practice to — well, it's actually a legal requirement.

It's really good practice to give people every chance possible to comply. So if I give someone a simple command like, "Lay on the ground," and they don't respond or don't follow that instruction, then I can understand that they are not complying. You know, then you move to the next step . . . .

¶ 22    Defense counsel didn't object to any of this testimony.

## B.    Discussion

¶ 23    Juranek asserts that Officer Drake's testimony discussing CSPD policies, best practices for foot pursuits, and his compliance with those policies and practices was improper expert testimony.

¶ 24    We review a trial court's decision to admit evidence for an abuse of discretion. *See People v. Martinez*, 2020 COA 141, ¶ 61. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or when it misapplies the law. *Id.* But where, as here, there is no objection at trial, we will reverse the trial court's admission of evidence only upon a showing of plain error. *See id.* at ¶ 62. An error is plain only if it is both obvious and substantial. *Hagos v. People*, 2012 CO 63, ¶ 14.

¶ 25    A witness's testimony may be classified as lay testimony, lay opinion testimony, or expert testimony. *People v. Murphy*, 2021 CO 22, ¶ 17. Lay testimony is based on facts, rather than on opinions, inferences, or conclusions. *Id.* Opinion testimony may constitute lay opinion under CRE 701 or expert opinion under CRE 702, depending on the basis for the witness's opinion. *Venalonzo v. People*, 2017 CO 9, ¶ 16. If the witness provides testimony that

11

could be expected to be based on an ordinary person's knowledge or experiences, then they are offering lay opinion testimony. *Id.* at ¶ 23. But if the witness provides testimony that could not be offered without specialized knowledge, experiences, or training, then they are offering expert testimony. *Id.*

¶ 26 "Police officers regularly, and appropriately, offer testimony under CRE 701 based on their perceptions and experiences." *People v. Tallwhiteman*, 124 P.3d 827, 832 (Colo. App. 2005); *accord Murphy*, ¶ 21. But an officer's testimony "becomes objectionable when what is essentially expert testimony is improperly admitted under the guise of lay opinions." *People v. Stewart*, 55 P.3d 107, 123 (Colo. 2002). However, "simply referencing one's 'training and experience' does not transform an officer's lay opinion testimony into expert testimony." *Murphy*, ¶ 31.

¶ 27 We conclude that the challenged testimony was not expert testimony under the guise of lay opinion testimony because Officer Drake was not offering an opinion at all. Law enforcement officers have been permitted to offer lay opinion testimony regarding, for example, inferences they've drawn from the body language of child witnesses, *id.* at ¶ 26; whether a razor blade attached to a

toothbrush could instill fear of or cause death or bodily injury, *People v. Oliver*, 2020 COA 97, ¶ 47; and whether shoeprints found at a crime scene appeared to match the print of the defendant's shoes, *Vigil v. People*, 2019 CO 105, ¶ 28, because an ordinary citizen without specialized knowledge or experience would be able to draw these conclusions. But unlike the testimony in these cases, Officer Drake wasn't drawing an inference or conclusion based on something he perceived. Rather, he was simply describing CSPD's policies and explaining his own course of action — that he terminated the vehicle pursuit quickly because he believed CSPD policy required him to do so, and that he conducted his foot pursuit in a particular way based on his understanding of best practices. *See People v. Warrick*, 284 P.3d 139, 146 (Colo. App. 2011) (rejecting the defendant's argument that a law enforcement officer gave improper opinion testimony, in part because the testimony "probably was not an 'opinion' in the first instance").

¶ 28 And even if Officer Drake's testimony may have veered into opinion territory at some points, it wasn't based on specialized knowledge, experience, or training such that it necessarily constituted expert testimony. Indeed, a layperson could assess the

dangers of car and foot chases, could consider when it might be reasonable for an officer to continue or discontinue a car chase, and could contemplate reasonable ways to end a foot chase while minimizing the risk of harm to the public.

¶ 29 Accordingly, the trial court didn't err — much less plainly err — by admitting the challenged testimony.

## IV. Prosecutorial Misconduct

¶ 30 Juranek further contends that the trial court erred by allowing the prosecutor to engage in misconduct during closing argument, requiring reversal. Again, we disagree.

¶ 31 When we review a claim of prosecutorial misconduct, "we consider whether the prosecutor's conduct was improper and whether any impropriety requires reversal." *People v. Walker*, 2022 COA 15, ¶ 27. "Whether a prosecutor's statements constitute misconduct is generally a matter left to the trial court's discretion." *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005). However, if the prosecutor's statements implicate a defendant's constitutional right to remain silent, the court's decision to allow the statements is subject to de novo review. *People v. Thames*, 2019 COA 124, ¶ 25.

14

¶ 32     A prosecutor has wide latitude to make arguments based on facts in evidence and reasonable inferences drawn from those facts. *People v. Maloy*, 2020 COA 71, ¶ 61.  Still, a prosecutor's arguments must stay within the ethical boundaries drawn by the courts.  *Domingo-Gomez*, 125 P.3d at 1048.

¶ 33     The parties agree that only one of Juranek's two prosecutorial misconduct claims is preserved for appeal.  While Juranek's preserved claim is governed by the harmless error standard, we review his unpreserved claim for plain error.  *See Wend v. People*, 235 P.3d 1089, 1097 (Colo. 2010); *People v. Licona-Ortega*, 2022 COA 27, ¶¶ 87-88.  As we've indicated, to constitute plain error, an error must be both obvious and substantial.  *Hagos*, ¶ 14.  For prosecutorial misconduct to constitute plain error, it must be "flagrantly, glaringly, or tremendously improper," *Domingo-Gomez*, 125 P.3d at 1053 (quoting *People v. Avila*, 944 P.2d 673, 676 (Colo. App. 1997)), and must "so undermine[] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the jury's verdict." *Id.*

A.    Reference to Post-Arrest Silence and Decision Not to Testify

¶ 34    Juranek first asserts that the following statements made by the prosecutor during closing argument improperly referred to his post-arrest silence and his decision not to testify:

> When Officer Drake finally apprehends him and says, "Hey, you know, don't take off in a vehicle, don't take off running," he's not, like, "What do you mean?  What vehicle?"  I know he had a lot of stuff going on, but he's not confused.  He's following what Officer Drake says.

¶ 35    Juranek also points to the following statements the prosecutor made after replaying the video of him talking to his girlfriend at the hospital:

> He was the driver.  He's not, like, "What are you talking about?  What did they tell you?  That didn't happen."

¶ 36    Because Juranek didn't preserve his challenge to these statements, our review is for plain error.  *See People v. Miller*, 113 P.3d 743, 748-50 (Colo. 2005) (even constitutional errors are subject to plain error analysis if they are unpreserved).

¶ 37    We discern no plain error in allowing the statements.  Although it's generally improper for a prosecutor to comment on a defendant's post-arrest silence, if a defendant doesn't stay silent,

16

it's not improper to point out omissions in their statements. *People v. Davis*, 312 P.3d 193, 198 (Colo. App. 2010), *aff'd*, 2013 CO 57. As previous divisions of this court have explained, "[a] defendant cannot have it both ways" — if the defendant talks, what they say or omit may be "judged on its merits or demerits." *People v. Knapp*, 2020 COA 107, ¶ 51 (quoting *Davis*, 312 P.3d at 199).

¶ 38    Here, the prosecutor's arguments related to two portions of the body camera evidence showing Juranek's statements after the car chase and the foot chase.

¶ 39    First, the prosecutor pointed out that, as the body camera footage shows, when Officer Drake handcuffed Juranek following the foot chase, the tasing, and Juranek's fall onto the concrete, Juranek spontaneously said, "Sorry about that." Then, when the officer said, "[T]hat's why we don't run from me in a car and then also on foot," Juranek responded, "Alright."

¶ 40    It may well have been fair for the prosecutor to note that Juranek made those statements — which could be interpreted to suggest that he understood he had been chased and was apologetic about it — rather than making any statements indicating that he had no idea what Officer Drake was talking about. *See id.*; *Davis*,

17

312 P.3d at 198. At a minimum, even if the statements went a little too far into referencing Juranek's silence, they certainly weren't so "flagrantly, glaringly, or tremendously improper" as to constitute plain error. *Domingo-Gomez*, 125 P.3d at 1053 (quoting *Avila*, 944 P.2d at 676).

¶ 41 Also, contrary to Juranek's suggestion, the prosecutor referred solely to Juranek's statements when he was first confronted and did not in any way allude to his decision not to testify at trial. *See People v. Gallegos*, 2023 COA 47, ¶ 92 (the prosecutor's statements in closing argument didn't infringe on the defendant's right to remain silent, in part because they neither referred to nor appeared calculated to direct the jury's attention to the defendant's decision not to testify), *aff'd*, 2025 CO 41M.

¶ 42 And second, the prosecutor pointed out that when Juranek called his girlfriend from the hospital and she told him she heard he'd taken off from the police, he didn't respond that nothing had happened or that he had no idea what she was talking about. Instead, as the body camera footage shows, he insisted that he "didn't know they were behind [him]," and that he "pulled over" thinking they "were after the car in front of [him]." In this context,

it was fair for the prosecutor to note the statements Juranek

made — and those he didn't make. *See Knapp*, ¶ 51; *Davis*, 312

P.3d at 198. And as before, the prosecutor didn't allude in any way

to Juranek's decision not to testify at trial. *See Gallegos*, ¶ 92.

¶ 43    Accordingly, we discern no plain error in allowing the

prosecutor's statements.

### B.    Conflation of the Charges

¶ 44    Juranek also asserts that the following statements by the

prosecutor improperly conflated the charge for vehicular eluding

with the charge for obstructing a peace officer:

> Officer Drake told him, "Fine, get up against
> the wall." He still doesn't even do that. He
> starts walking away again. After not only
> leading the officer on a vehicular chase, not
> only after running the first time he's contacted,
> but again after the officer finally gets him to
> stop and says put your hands behind your
> back, he knows what's going on and he tries to
> go away again. All of these actions not only
> demonstrate he was the driver, not only
> demonstrate he knew he was being pursued,
> this is the touchstone of vehicular eluding. So
> I'm asking you to find him guilty of that.
>
> The final charge is obstructing a peace officer,
> and there is some overlap here between his
> knowledge of the eluding and what happened
> for the obstruction charge. The obstruction
> charge requires that the defendant, on the date

> and place charged, knowingly, by using or threatening to use violence, force —

Defense counsel at that point objected, arguing that the prosecutor was improperly suggesting the jury should consider the car chase as part of the obstruction charge. The court sustained the objection and asked the prosecutor "to clarify [that] the car part of things has nothing to do with the elements of obstructing."

¶ 45 The prosecutor then continued by listing the elements of obstruction and outlining the facts supporting those elements, all of which occurred at the townhome complex.

¶ 46 Even assuming that we can review this claim, notwithstanding that Juranek didn't seek any additional relief from the trial court after it sustained his counsel's objection, *see People v. Douglas*, 2012 COA 57, ¶ 65, we discern no error. It's apparent that the prosecutor wasn't trying to conflate the facts relevant to the vehicular eluding and obstruction charges; instead, she was trying to argue that because the conduct underlying both charges occurred close in time and involved fleeing an officer, evidence supporting one charge could be relevant to establishing Juranek's knowledge that he was being pursued and his intent to try to flee as

20

to the other charge. *Cf. Rojas v. People*, 2022 CO 8, ¶ 26 (other acts evidence may appropriately be used to establish knowledge and intent). And while, at first, the prosecutor's discussion of the facts was perhaps inartful, the prosecutor did distinctly outline the elements the prosecution was required to prove as to each charge. Further, after the court sustained defense counsel's objection and requested that the prosecutor clarify the distinction, the prosecutor stated that the obstruction charge was based on the foot chase that occurred after Officer Drake arrived at the townhome complex.

¶ 47    Because we discern no error, we decline to disturb the judgment on this basis.

## V.    Cumulative Error

¶ 48    Finally, Juranek asserts that cumulative error warrants reversal.

¶ 49    "The doctrine of cumulative error is based on the notion that multiple errors, in isolation, may be viewed as harmless, but the synergistic effect of the multiple errors may be so prejudicial that they deprive a defendant of a fair trial." *People v. Serna-Lopez*, 2023 COA 21, ¶ 47. "Stated simply, cumulative error involves cumulative prejudice." *Howard-Walker v. People*, 2019 CO 69, ¶ 25. Thus,

cumulative error analysis is required only when multiple errors have been identified. *Id.*

¶ 50 Because we have not identified multiple errors, we reject Juranek's cumulative error claim.

## VI. Disposition

¶ 51 The judgment is affirmed.

JUDGE PAWAR and JUDGE JOHNSON concur.